Daniel A. Lev (CA Bar No. 129622)
daniel.lev@gmlaw.com
**Greenspoon Marder LLP**
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 954.771.9264

Ronald Richards (CA Bar No. 176246)
ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone: 310.556.1001
Facsimile: 310.277.3325

Attorneys for Blue Jay 180, LLC

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

In re

S&W BLUE JAY WAY, LLC,

Debtor.

Case No. 9:23-bk-10672-RC

Chapter 11

**BLUE JAY 180, LLC'S RESPONSE TO MOTION FOR ORDER APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S REAL PROPERTY**

DATE: August 22, 2023
TIME: 2:00 p.m.
PLACE: Courtroom "5D"

Blue Jay 180, LLC, a California limited liability company ("Blue Jay"), hereby submits "Blue Jay 180 LLC's Response to Motion for Order Approving Bidding Procedures for the Sale of the Debtor's Real Property" (the "Response"), in response to the "Debtor's Motion for Order Approving Bidding Procedures for the Sale of the Debtor's Real Property; Declaration of Hushmand Sohaili" (the "Motion"), filed by S&W Blue Jay Way, LLC (the "Debtor"), the debtor and debtor in possession, and represents as follows:

## I.

## PREFATORY STATEMENT

Blue Jay, a junior lienholder, generally is not opposed to a sale of the Debtor's Property through a fair and robust process that maximizes value.[1] However, as this Court knows, Section 363 sales are fraught with the potential for misuse. Here, the Debtor is proposing a truncated bidding and sale process that may well serve the interests of administrative claimants and the Senior Lienholders (who have agreed to discount the amount they are willing to accept through a sale), but will almost certainly disadvantage both Blue Jay and unsecured creditors.[2] So while Blue Jay supports the

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

---

[1] Unless otherwise stated, the use of capitalized terms herein shall have the meaning ascribed to them in the "Debtor's Motion for Order Approving Bidding Procedures for the Sale of the Debtor's Real Property; Declaration of Hushmand Sohaili" (the "Motion") [Docket No. 2].

[2] According to the "Stipulation Between Debtor and Senior Lienholders Regarding Sale of Debtor's Real Property" (the "Carve-Out Stipulation") filed on August 4, 2023 [Docket No. 6], the Senior Lienholders, who allegedly are owed no less than $4,200,561.92, have, subject to court approval, consented to a sale of the Debtor's property free and clear of their liens pursuant to 11 U.S.C. § 363(f), provided that the sale results in a payment directly from escrow of no less than $3,550,000 to the Senior Lienholders. In addition, provided that the net purchase price of the property is sufficient, (i) the Senior Lienholders shall carve out from their lien on the proceeds of the sale the sum of $500,000, which shall be reserved for the payment of allowed administrative expenses and allowed unsecured claims, (ii) the Senior Lienholders shall retain an allowed secured claim for any portion of the $500,000 carveout that is not used to be allowed administrative expenses or unsecured claims, and (iii) such claim may be paid to the Senior Lienholders pursuant to any chapter 11 plan that may be confirmed in this case. For a variety of reasons, the Court denied the Carve-Out Stipulation pursuant to an order entered on August 15, 2023, but the Debtor has now re-filed the stipulation providing creditors with an opportunity to object and request a hearing. Notwithstanding the denial and re-filing of the Carve-Out Stipulation, it is obvious both the Debtor and the Senior Lienholders are only incentivized to accept a bid price that clears the two financial hurdles, while totally ignoring Blue Jay's junior lien. As a fiduciary, the Debtor cannot engage in this type of selective sale process, even if it disputes Blue Jay's lien as it now contends. See In re Nadler, 8 B.R. 330 (Bankr. E.D. Pa. 1980) (a debtor in possession, as a fiduciary, represents both the secured and unsecured creditors of the debtor).

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

Debtor's efforts to sell the Property, it cannot be done in a manner meant to limit bids and erode Blue Jay's secured claim.

II.

**RELEVANT BACKGROUND**

**A. The Debtor's Indebtedness to Blue Jay**

**1. The Original Loan**

In or about February 2013, Robert Cohen as Trustee of the Cohen Family Trust Dated March 13, 1986 as Restated December 31, 2005 (the "Original Lender") agreed to loan the Debtor the maximum principal amount of $2,500,000 (the "Cohen Loan") for purposes of the Debtor's acquisition of the Property on which it intended to develop a multi-million dollar single family "spec" home.[3] The Cohen Loan from the Original Lender to the Debtor is evidenced by a "Promissory Note Secured By Deed of Trust" (the "Note") dated February 26, 2013.

The terms of the Cohen Loan, except as amended by the Original Lender and the Debtor, are set forth in the Note, but, as noted, the Original Lender agreed to loan the Debtor the maximum principal sum of $2,500,000, with an initial advance in the amount of $1,750,000 at the time the Debtor closed on the purchase of the Property, with subsequent advances in the minimum amounts of $100,000. The Note was drafted by Hushmand Sohaili, who was also Mr. Cohen's lawyer at the time. The interest rate on the Cohen Loan under the Note is 12% per annum, with a contractual default rate of an additional 4% per annum. The original maturity date on the Note and Cohen Loan was the earlier of August 26, 2015, or upon the closing of the Debtor's sale of the Property.

The Note, and all payments and obligations thereunder, was secured by a "Deed of Trust with Assignment of Rents (Long Form)" on the Property, dated March 5, 2013, and duly recorded in the Official Records, Recorder's Office, Los Angeles County,

---

[3] The Motion defines the Property as the real property located at 1627-1633 Blue Jay Way, Los Angeles, California 90069, together with all rights appurtenant thereto.

California, on March 19, 2013, as Document No. 20130411255 (the "Cohen Blue Jay DOT"). The Cohen Blue Jay DOT was to be junior to a deed of trust granted by the Debtor to East West Bank to secure additional funding in the amount not to exceed $3,000,000 for the Debtor's initial acquisition of the Property.

On May 1, 2017, the Original Lender and the Debtor entered into an "Amendment to Promissory Note Secured by Deed of Trust" (the "Amendment to Note") which, among other things, extended the original majority date of the Cohen Loan and Note to the earlier of May 1, 2019, or the closing of the sale of the Property by the Debtor. However, the Debtor failed to pay all principal, interest, and other amounts due and owing on the Note by May 1, 2019, the extended maturity date set forth in the Amendment to Note.

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

### 2. <u>Blue Jay's Acquisition of the Cohen Loan</u>

In exchange for good and valuable consideration, and pursuant to an assignment of the Note from the Original Lender to Blue Jay, on or about April 25, 2023, the Original Lender executed and delivered to Blue Jay an "Allonge to Promissory Note Secured by Deed of Trust" (the "Allonge") making all amounts due and owing on the Note by the Debtor payable to Blue Jay. Pursuant to the Allonge, effective as of April 25, 2023, Blue Jay is the beneficiary and owner of all right, title, interest, and remedies in and to the Cohen Loan and Note, as amended.

The assignment of the Cohen Blue Jay DOT from the Original Lender to Blue Jay is evidenced by an "Assignment of Deed of Trust with Assignment of Rents (Long Form)", dated April 26, 2023, recorded on May 3, 2023, in the Official Records, Recorder's Office, Los Angeles County, California, as Document No. 20230286457 (the "Assignment of Cohen Blue Jay DOT"). Pursuant to the Assignment of Cohen Blue Jay DOT, Blue Jay is the beneficiary and owner of all right, title, interest, and remedies in and to the Cohen Blue Jay DOT.

As of the date of its chapter 11 filing, the Debtor is and remains in default of its obligations to Blue Jay, as assignee, under the Note, as amended by the Amendment

to Note by, among other things, failing to pay the total indebtedness due and owing. As of June 1, 2023, a conservative amount of $1,950,000 is due, owing, and payable by the Debtor to Blue Jay, which consists of principal only. Interest, default interest, costs, attorneys' fees, and other sums are also currently due and owing under the Note and continue to accrue.[4]

**B. Other Lien Eroding Blue Jay's Position**

As alluded to earlier, Blue Jay's lien is junior to that of the Senior Lienholders, who allege a secured claim of not less than $4,200,561.92. This amount, however, remains in dispute. In addition, there may be other liens that are senior to Blue Jay, such as unpaid real property tax liens, however, Blue Jay currently has no knowledge if such liens exist. Although the Debtor now disputes Blue Jay's lien, it has not articulated the basis for its position and, at this time, Blue Jay's lien remains of record and cannot be summarily disregarded while the Debtor is in chapter 11.[5]

## III.

## THE PROPOSED BIDDING PROCEDURES ARE PREJUDICIAL TO BLUE JAY

The overriding goal of any proposed asset sale under Section 363 of the Code is to maximize the proceeds received by a debtor's estate. See Official Comm. of Unsecured Creditors of Cybergenics Corp., v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003). The purpose of bidding procedure orders is to facilitate an open and fair public sale

---

[4] The events leading to Blue Jay's acquisition of the underlying obligations owed by the Debtor and secured by the Property are contained in the "Complaint for: (1) Judicial Foreclosure of Deed of Trust, (2) Judicial Foreclosure of Deed of Trust, (3) Money Due, (4) Open Book Account, and (5) Declaratory Relief" filed by Blue Jay against the Debtor, among others, in the Superior Court of the State of California for the County of Los Angeles, bearing Case No. 23SMCV02921, a true and correct copy of which is attached as Exhibit "A" to the "Request for Judicial Notice in Support of Debtor's Motion for Order Approving Bidding Procedures for the Sale of the Debtor's Real Property" filed by the Debtor on August 4, 2023.

[5] In its voluntary petition, the Debtor correctly identified itself as a "SARE" case, making it obligated to follow the rules and statutes peculiar to SARE cases. For instance, a court must modify the automatic stay as to SARE within the specified period unless the debtor files a plan that appears to be confirmable within a reasonable time, or starts making monthly interest-only payments at the non-default contract rate. See 11 U.S.C. § 362(d)(3); Bankers' Bank of Kan. v. Bluejay Props., LLC (In re Bluejay Props., LLC), 512 B.R. 390 (B.A.P. 10th Cir. 2014).

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

designed to maximize value for the estate. See In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997); In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998). To accomplish that goal, bankruptcy courts are necessarily given discretion and latitude in conducting a sale.

In this regard, a court should not merely defer to a debtor's "sound" business judgment; indeed, the court need not consider the debtor's business judgment in matters of process under the Bankruptcy Code, but should instead assess the fairness and reasonableness of the proposed bid procedures. See In re American Safety Razor Co., LLC, Case No. 10-12351 (MFW) (Bankr. D. Del. Sept. 30, 2010) Tr. at 132-33 ("I don't think, as the debtors suggest, that my consideration of bid procedures is based on the business judgment rule. I need not accept the debtors' business judgment with respect to process. The Bankruptcy Code and Rules and the process under the Bankruptcy Code are all matters . . . for the Court's determination as to what is fair and reasonable. In fact, I think that's my only role in this case; to determine what is fair for all the parties."). See also In re Diocese of Buffalo, N.Y., 637 B.R. 701 (Bankr. W.D.N.Y. 2022) (although an auction could represent an exercise of sound business judgment, the debtor abandons that judgment by recommending procedures that unduly discourage competitive bidding).

The sale process thus far and the proposed Bidding Procedures fail to meet the goals of an open process meant to maximize value. In fact, the Motion, if approved, authorizes the Debtor to liquidate its only known asset for some unknown price; a price that likely will be artificially low due to the expedited nature of the bidding process. Asking parties to submit bids by October 6 (or a day which is 60 days after entry of the order granting the Motion), when the chapter 11 was just filed on August 4, is extremely premature and certainly will not reflect a vigorous marketing effort on the part of the estate's brokers, who have yet to even be employed.

As a result, the only likely beneficiaries of a sale at this juncture are vulture buyers because of their ability to scoop up the Debtor's sole asset at a distressed price,

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

as well as the Senior Lienholders who already have agreed to accept a reduced price with an agreed-to carve-out in order to facilitate a prompt sale. The sale process, as drawn up, plainly prejudices Blue Jay by not allowing the brokers to fully market this valuable parcel of property to as wide a net of potential bidders as possible.

This is especially true since the Motion does not provide any guidance with respect to a proposed purchase price. Rather, the Debtor merely seeks court-approval of certain bid and auction related procedures relating to the proposed sale, including a $25,000 break-up fee and $50,000 expense reimbursement. While Blue Jay acknowledges that Section 363 sales have been achieved in different circumstances on timeframes similar to this one, under the circumstances of this case, the requested period for soliciting bids and approving a sale is too short to allow a robust marketing process to take place particularly since, as just noted, the proposed brokers have not been employed and no marketing process has begun to the best of Blue Jay's knowledge.

For these reasons, the deadlines associated with the proposed auction must be extended to ensure that, if there is to be a sale, all parties in interest have a fair opportunity to perform due diligence and submit a bid.

Blue Jay also has concerns over the proposed break-up fee and expense reimbursement. There was a time when break-up fees were an aberration and rarely granted in bankruptcy cases. It is really only the last two decades that break-up fees became a standard Section 363 sale protection. See The Case Against Breakup Fees in Bankruptcy, 66 Am. Bankr. L.J. 349 (Fall 1992) (published in the early 1990s and discussing the anomalous break-up fee). But even based on modern practice, break-up fees are only justified where they encourage subsequent bidders to bid for the debtor's assets. In the Asarco case, the Fifth Circuit elaborated on the justification for break-up fees in bankruptcy cases:

> In the context of bankruptcy auction sales, break-up fees are sometimes authorized . . . because they provide an incentive for an initial bidder to serve as a so-called 'stalking horse,'

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

> whose initial research, due diligence, and subsequent bid may encourage later bidders. The break-up fee compensates the stalking horse for the risk it shoulders in being the first bidder.

In re Asarco, LLC, 650 F.3d 593, 602 n.9 (5th Cir. 2011).

Further, break-up fees that relate to expenses already incurred by the bidder at the time presented to the court must also meet the standards for allowance of an administrative claim under 11 U.S.C. § 503(b). See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 537 (3d Cir. 1999) ("We therefore conclude that the determination whether break-up fees or expenses are allowable under § 503(b) must be made in reference to general administrative expense jurisprudence. In other words, the allowability of breakup fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate.").

Here, before any substantive marketing efforts have taken place and any bids even made, the Debtor is hampering the sale process by presenting a $75,000 windfall to a staking-horse bidder. Although the Debtor claims that the amount of the break-up fee and expense reimbursement are reasonable in light of the costs and fees the stalking-horse bidder is "expected" to incur negotiating the sale agreement, participating in a bankruptcy sale process, and conducting due diligence, including the cost of obtaining geotechnical reports, there is no evidence supporting the necessity or proposed amount of either a break-up fee or an expense reimbursement at this time.

Although Blue Jay can envision a scenario where a stalking-horse bidder may be entitled to some form of an expense reimbursement, there should be a ceiling in place lower than $50,000 and the stalking-horse bidder should be required to submit its expenses to the Court for review prior to being awarded what is in essence an administrative claim. If the Debtor disagrees, it should proffer the necessary evidence

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

establishing how it arrived at a $50,000 expense reimbursement figure, on top of a $25,000 break-up fee.

## IV.

## RESERVATION OF RIGHTS

At this stage, Blue Jay has not been presented with any bid to review and no sale motion is pending. As such, Blue Jay expressly reserves all rights with respect to the submission of any stalking-horse bid and any overbid proposals submitted prior to or at the Auction or the hearing on the Sale Motion, and to assert a more fulsome objection and any additional objections to the proposed sale at the hearing to approve the sale, including the amount of the Senior Lienholders' claim and whether the successful buyer is entitled to the protections of 11 U.S.C. § 363(m). Nothing contained herein shall be construed as an admission with respect to the Sale Motion or any potential overbid, a waiver of arguments, claims, or defenses, or an election of remedies.

## V.

## CONCLUSION

Based on the foregoing, Blue Jay respectfully requests that the Motion only be granted subject to the modifications detailed herein, and for such other and further relief as the Court deems just and proper.

DATED: August 15, 2023

**GREENSPOON MARDER LLP**

By: */s/ Daniel A. Lev*
Daniel A. Lev
Attorneys for Blue Jay 180, LLC

DATED: August 15, 2023

**LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, APC**

By: [signature]
Ronald Richards
Attorneys for Blue Jay 180, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **BLUE JAY 180, LLC'S RESPONSE TO MOTION FOR ORDER APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S REAL PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 16, 2023 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Brian David Fittipaldi** brian.fittipaldi@usdoj.gov
- **Daniel A Lev** daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Ronald N Richards** ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **United States Trustee (ND)** ustpregion16.nd.ecf@usdoj.gov
- **Roye Zur** rzur@elkinskalt.com, cavila@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _______________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| August 16, 2023 | Cheryl Caldwell | */s/Cheryl Caldwell* |
| *Date* | *Printed Name* | *Signature* |