ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
*rzur@elkinskalt.com*
LAUREN N. GANS State Bar No. 247542
*lgans@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Attorneys for Reorganized Debtor
S&W Blue Jay Way, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

In re

S&W BLUE JAY WAY, LLC,

Reorganized Debtor.

Case No. 9:23-bk-10672-RC

Chapter 11

**REORGANIZED DEBTOR'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON ITS OBJECTION TO CLAIM NO. 2-1 OF BLUE JAY 180, LLC**

[*Proposed Statement of Uncontroverted Facts and Conclusions of Law and Declarations of Roye Zur, Hushmand Sohaili, Richard Weintraub, and Daniel Shlomi filed concurrently herewith*]

**<u>Hearing Date and Time:</u>**
Date: May 8, 2025
Time: 9:00 a.m.
Place: Courtroom 5D
411 W. 4th St.
Santa Ana, CA 92701

Honorable Ronald A. Clifford III

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**PLEASE TAKE NOTICE** that reorganized debtor S&W Blue Jay Way, LLC (the "Debtor") hereby moves the Court (the "Motion"), under Federal Rules of Bankruptcy Procedure 7056 and 9014(c), Federal Rule of Civil Procedure 56, and Local Bankruptcy Rule 7056-1, for summary judgment on the Debtor's *Objection to Claim No. 2-1 of Blue Jay 180, LLC, a California Limited Liability Company* [Docket No. 90] (the "Claim Objection"). Specifically, the Debtor seeks a summary judgment disallowing in its entirety Claim No. 2-1 (the "Claim") of Blue Jay 180, LLC ("BJ180") pursuant to 11 U.S.C. § 502(b)(1).

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice, the appended Memorandum of Points and Authorities, and concurrently-filed Proposed Statement of Uncontroverted Facts, Request for Judicial Notice, and Declarations of Roye Zur, Hushmand Sohaili, Richard Weintraub, and Daniel Shlomi, the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion. In addition, the Debtor requests that the Court take judicial notice of all documents filed in the Debtor's bankruptcy case and in the adversary proceeding entitled *Beverly Cohen, et al. v. Hushmand Sohaili*, Adv. No. 9:24-ap-01033-RC.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place <u>in person</u> before the Honorable Ronald A. Clifford III on May 8, 2025 (the "Hearing Date"), at 9:00 a.m., in Courtroom 5D, located at 411 West Fourth Street, Santa Ana, California 92701. Any opposition to the Motion must be filed with the Court and served on counsel for the Debtor (Elkins Kalt Weintraub Reuven Gartside LLP, Attention: Roye Zur, *rzur@elkinskalt.com*, 10345 W. Olympic Blvd., Los Angeles, California 90064) no later than 21 days prior to the Hearing Date.

**PLEASE TAKE FURTHER NOTICE** that the failure to timely file an opposition to the Motion may be deemed to be consent to the granting of the Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

**WHEREFORE**, the Debtor respectfully requests that the Court enter summary judgment sustaining the Objection, disallowing the Claim in its entirety pursuant to 11 U.S.C. § 502(b)(1), setting a further hearing to consider an award of the Debtor's attorneys' fees in accordance with applicable California law, and granting such other and further relief as the Court deems just and proper.

DATED: January 10, 2025

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

By: ______________________

ROYE ZUR
LAUREN N. GANS
Attorneys for Reorganized Debtor
S&W Blue Jay Way, LLC

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 9

II. STATEMENT OF FACTS ..... 9

A. Commencement of the Case and Confirmation of the Plan ..... 9

B. The Debtor and Its Principals ..... 10

C. The Loan ..... 10

1. General Background ..... 10

2. Terms of the Note ..... 14

B. The Debtor's Payments to the Cohen Trust ..... 15

C. Foreclosure Proceedings by the Cohen Trust and BJ180 ..... 15

D. The Claim ..... 16

E. The Claim Objection ..... 16

F. Discovery on the Claim Objection ..... 16

III. SUMMARY JUDGMENT STANDARD ..... 17

IV. THE COURT SHOULD ENTER SUMMARY JUDGMENT SUSTAINING THE DEBTOR'S OBJECTION TO THE CLAIM ..... 18

A. The Loan Is Usurious on Its Face ..... 18

B. There Is No Factual or Legal Basis for Estoppel ..... 20

1. As a Matter of Law, a Borrower Is Not Estopped from Asserting Usury as a *Defense* Unless It Engaged in Fraudulent Conduct ..... 20

2. There Is No Basis for Estoppel Against the Debtor ..... 21

C. The Loan Is Not Subject to any Usury Exemptions ..... 26

1. Usury Exemptions Generally ..... 26

2. Section 25118(b) Does Not Apply to the Loan ..... 27

3. The Section 25118 Exemption Applies Only to Issuers of Securities ..... 28

(a) The Plain Language of Section 25118 Makes Clear that It Applies Solely to Lenders and Issuers Dealing in Securities ..... 28

(b) The Legislative History of Section 25118 Makes Clear that It Applies Solely to Lenders and Issuers Dealing in Securities ..... 31

4. The Private Real Estate Loan Made by the Cohen Trust Is Not a Security....34

D. Because All Interest Paid on the Loan Is Credited to Principal, BJ180's Claim Must Be Reduced to $0....35

V. CONCLUSION....36

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) .......... 18

*Agapitov v. Lerner*,
108 Cal. App. 4th 830 (2003) .......... 26, 27

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 17, 18

*Bhan v. NME Hospitals, Inc.*,
929 F.2d 1404 (9th Cir. 1991) .......... 18

*In re Bittaker*,
55 Cal. App. 4th 1004 (1997) .......... 30

*Buck v. Dahlgren*,
23 Cal. App. 3d 779 (1972) .......... 20, 21, 25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 18

*Davis v. Chase Bank U.S.A., N.A.*,
453 F. Supp. 2d 1205 (C.D. Cal. 2006) .......... 29

*Fiduciary Trust Int'l of Cal. v. Klein*,
2020 WL 357143 (Cal. Ct. App. Jan. 22, 2020) .......... 12

*Ghirardo v. Antonioli*,
8 Cal. 4th 791 (1994) .......... 19

*Gibbo v. Berger*,
123 Cal. App. 4th 396 (2004) .......... 36

*Golden State Lanes v. Fox*,
232 Cal. App. 2d 135 (1965) .......... 22

*Great W. Bank & Trust v. Kotz*,
532 F.2d 1252 (9th Cir. 1976) .......... 35

*Hamilton Jewelers v. Dept. of Corp.*,
37 Cal. App. 3d 330 (1974) .......... 29

*Hardwick v. Wilcox*,
11 Cal. App. 5th 975 (2017) .......... 36

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

*Heald v. Friis-Hansen*,
52 Cal. 2d 834 (1959) .......... 20

*Jue v. Bass*,
299 F.2d 374 (9th Cir. 1962) .......... 20

*Korchemny v. Piterman*,
68 Cal. App. 5th 1032 (2021) .......... 36

*Lakeview Meadows Ranch v. Bintliff*,
36 Cal. App. 3d 418 (1973) .......... 23, 24, 25

*Martin v. Ajax Construction Co.*,
124 Cal. App. 2d 425 (1954) .......... 20, 22

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 18

*Maze v. Sycamore Homes, Inc.*,
230 Cal. App. 2d 746 (1964) .......... 19, 20

*McClung v. Saito*,
4 Cal. App. 3d 143 (1970) .......... 21

*Moore v. Hill*,
188 Cal. App. 4th 1267 (2010) .......... 26, 27

*Moreland v. Dept. of Corp.*,
194 Cal. App. 3d 506 (1987) .......... 29

*People v. Black*,
8 Cal. App. 5th 889 (2017) .......... 35

*People v. Figueroa*,
41 Cal. 3d 714 (1986) .......... 35

*People v. Tran*,
61 Cal. 4th 1160 (2015) .......... 30

*SEC v. Howey*,
328 U.S. 293 (1946) .......... 35

*Silver Hills Country Club v. Sobieski*,
55 Cal. 2d 811 (1961) .......... 35

*Stickel v. Harris*,
196 Cal. App. 3d 575 (1987) .......... 27

*Stock v. Meek*,
35 Cal. 2d 809 (1950) .......... 25

*Tai-Si Kim v. Kearney*,
838 F. Supp. 2d 1077 (D. Nev. 2012) ....................30

*Thomas v. Hunt Mfg. Corp.*,
42 Cal. 2d 734 (1954)....................19

*White v. Seitzman*,
230 Cal. App. 2d 756 (1964)....................20

*WRI Opportunity Loans II, LLC v. Cooper*,
154 Cal. App. 4th 525 (2007)....................19

*Yzewig v. Hearst Corp.*,
521 F.2d 1129 (9th Cir. 1975)....................18

**Statutes**

Bankruptcy Code § 502(b)(1) ....................36

Cal Corp. Code § 25116....................29, 30, 31, 32, 33, 34

Cal. Corp. Code § 25117....................29, 30, 34

Cal. Corp. Code § 25118....................16, 28, 29, 30, 31, 32, 33, 34

California Civil Code § 1717 ....................37

California Corporate Securities Law § 25118....................16, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35

California Corporations Code § 25113 ....................32, 33

Corporations Code § 25010....................29

Corporations Code § 25019....................34

**Rules**

Fed. R. Civ. P. 56 ....................17, 18

Fed. R. Bankr. P. 7056 ....................17

Fed. R. Bankr. P. 9014(c)....................17

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this Motion, S&W Blue Jay Way, LLC (the "Debtor" or "Reorganized Debtor") seeks summary judgment in connection with its objection (the "Claim Objection") [Docket No. 90] to Claim No. 2-1 (the "Claim") of Blue Jay 180, LLC, a California limited liability company ("BJ180").

The Claim is based on a usurious loan on which the Debtor has paid BJ180's predecessor-in-interest – the Cohen Family Trust Dated March 13, 1986 as Restated December 31, 2005 (the "Cohen Trust") – unlawful interest in excess of the principal amount owed under that loan.

Discovery in this matter has confirmed that there is no legal or factual basis for estoppel against the Reorganized Debtor's assertion of usury as a defense against the Cohen Trust's attempt to collect interest in excess of what is permitted under California law. In its verified responses to the Reorganized Debtor's interrogatories, BJ180 has admitted that it does not contend that the Debtor defrauded the Cohen Trust in obtaining the loan. Indeed, the evidence submitted in support of this Motion establishes overwhelmingly that there was no fraud or anything close to it on the part of the Debtor or its principals. Therefore, there is no basis for estoppel as a matter of law.

Pursuant to black-letter California law, all interest payments made on the usurious loan must be applied to principal. As explained below, application of interest paid by the Debtor to the Cohen Trust reduces the principal to zero, resulting in the elimination of the Claim in its entirety. The result of this is that the Cohen Trust will have been repaid every cent that it lent to the Debtor, but that it will not be allowed to profit off of a usurious loan.

For all of the foregoing reasons, the Court should grant the Motion and enter summary judgment sustaining the Claim Objection in its entirety.

## II. STATEMENT OF FACTS

### A. Commencement of the Case and Confirmation of the Plan

On August 4, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. [Docket No. 1.]

On May, 24, 2024, the Court entered an order confirming the Debtor's First Amended

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Chapter 11 Plan of Reorganization (the "Plan"). [Docket No. 188.] On June 13, 2024, the Plan went effective. [Docket No. 198.]

**B. <u>The Debtor and Its Principals</u>**

The Debtor is a California limited liability company. The Debtor has two managing members – 1966 BJW, LLC, and HS Blue Jay Way, LLC. The principals of the two managing members are Richard Weintraub and Hushmand Sohaili, respectively. Mr. Weintraub is a real estate developer by trade and Mr. Sohaili is a retired attorney, having spent a significant portion of his career at the law firm Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"). Reorganized Debtor's Separate Statement of Uncontroverted Facts in Support of Its Motion For Summary Judgment on Its Objection to Claim No. 2-1 of Blue Jay, LLC ("UF") 1.

**C. <u>The Loan</u>**

**1. General Background**

In early 2013, Messrs. Weintraub and Sohaili identified a potential investment – the development of a high-end residential property on a vacant lot located at 1627-1633 Blue Jay Way, Los Angeles, CA 90069 (the "Property"). Messrs. Weintraub and Sohaili executed an agreement to purchase the Property for $4,400,000 and funded a non-refundable deposit towards that purchase. Declaration of Hushmand Sohaili in Support of the Reorganized Debtor's Motion For Summary Judgment on Its Objection to Claim No. 2-1 of Blue Jay 180, LLC ("Sohaili Decl.") ¶ 10.

In or about early February 2013 – *i.e.*, after the opening of escrow on the purchase of the Property – Mr. Sohaili spoke with Robert Cohen about potentially becoming a partner with Messrs. Sohaili and Weintraub in the investment. *Id.* To that end, Mr. Sohaili formed an entity called "RC/HS, LLC" in furtherance of that conversation. Mr. Sohaili knew Robert Cohen from Akin Gump's representation of Burton Way Hotels, Ltd. ("BWH"), which is the owner of what is commonly known as the Four Seasons Hotel Los Angeles at Beverly Hills. UF 4. The Cohen Family Trust Dated March 13, 1986 as Restated December 31, 2005 (the "Cohen Trust") was the beneficial majority owner of BWH. *Id.* Mr. Sohaili had understood that Robert Cohen had invested in a smaller property close to the Property, and had expressed an interest in investing in the Property as well. Sohaili Decl., at ¶ 10.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

At some point during Mr. Sohaili's discussions with Robert Cohen (which occurred during the time that Mr. Weintraub and Mr. Sohaili were committed to the purchase of the Property), Robert Cohen told Mr. Weintraub and Mr. Sohaili that he was not comfortable being an equity investor, but that he would be willing to lend the funds necessary for the purchase. Mr. Sohaili inquired regarding the interest rate, and Robert Cohen said that he would not charge any points, but that he normally gets 12% interest. Robert Cohen also said that he would require personal guaranties by Mr. Weintraub and Mr. Sohaili. After Mr. Sohaili questioned giving a personal guaranty and paying 12% interest (when banks were charging only 4%), Robert Cohen agreed (after some back and forth) not to require personal guaranties so long as the interest rate remained at 12%. *Id.* at ¶ 11. None of the Debtor, Mr. Sohaili, or Mr. Weintraub proposed the 12% interest rate. UF 13. When Mr. Sohaili asked Mr. Weintraub to approve the loan terms and Mr. Weintraub questioned the necessity of such a high interest rate, Mr. Sohaili told him that this is what Robert Cohen demanded and that they had limited options other than to accept the loan terms or drop out of escrow. Declaration of Richard Weintraub in Support of the Reorganized Debtor's Motion For Summary Judgment on Its Objection to Claim No. 2-1 of Blue Jay 180, LLC ("Weintraub Decl.") at ¶ 3, 7.

The lender in the transaction was the Cohen Trust. UF 2. Neither Mr. Sohaili nor Akin Gump ever represented the Cohen Trust. UF 3. This has been confirmed by Akin Gump. Declaration of Daniel Shlomi in Support of the Reorganized Debtor's Motion For Summary Judgment on Its Objection to Claim No. 2-1 of Blue Jay 180, LLC ("Shlomi Decl.") ¶ 6. (Akin Gump had represented Robert Cohen <u>personally</u> on minor unrelated matters but – as confirmed by Akin Gump – no Akin Gump attorney (including Mr. Sohaili) performed any services for Robert Cohen personally from 2009 until well after the loan transaction had been completed.[1] Sohaili Decl. ¶ 7, *see also* Docket No. 218, Declaration of Roye Zur re Discovery ("Zur Discovery Decl.") ¶¶ 4-11. Most significantly, Robert Cohen as an individual is separate and distinct from the Cohen Trust, and Akin Gump's representation of Robert Cohen as an individual on unrelated matters for minimal

[1] Any time recorded by other Akin Gump attorneys (for matters unrelated to the loan) was minimal and post-dated the loan transaction. This minimal time was written off in 2015 when Robert Cohen as an individual client was terminated with Akin Gump. As verified by discovery Robert Cohen personally made no payments to Akin Gump after 2009. The Cohen Trust never made any payments to Akin Gump.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

time does not mean it represented the Cohen Trust. *See Fiduciary Trust Int'l of Cal. v. Klein*, 2020 WL 357143, at *5 (Cal. Ct. App. Jan. 22, 2020) ("Klein and Reynolds, as trustees, and Klein and Reynolds, as individuals, were separate clients.") As such, even the minimal tine spent by other Akin Gump attorneys on Robert Cohen's personal matters following consummation of the Loan is irrelevant.)

Although the Cohen Trust was not a client of Akin Gump, given Akin Gump's representation of BWH (of which the Cohen Trust was a majority partner), out of an abundance of caution, Mr. Sohaili told Robert Cohen that he would need a conflict waiver from Robert Cohen, and instructed him to consult with independent counsel of his choice. UF 3-6. Robert Cohen understood, as a sophisticated business person who had handled many complex real estate and other legal issues, and having received and signed conflict waivers in the past, knew he could not rely on Akin or Mr Sohaili. but would have to obtain his own counsel. Weintraub Decl., ¶ 5.

In or about early February 2013, Mr. Sohaili asked a then-junior real estate associate at Akin Gump, Daniel Shlomi, to draft the Note, Conflict Waiver and an Indemnity Agreement between the Debtor and the Cohen Trust. Shlomi Decl., ¶ 4, 5, 6. Mr. Shlomi, representing solely Mr. Sohaili's interest, separately documented with Mr. Weintraub's counsel, Rahsaana Allen, the Operating Agreement. UF 7. Neither Mr. Shlomi or Akin Gump nor Ms. Allen represented the Debtor; the Debtor did not have counsel. UF 8.

The Conflict Waiver letter signed by Robert Cohen listed in detail the material terms of the loan transaction between the Cohen Trust and the Debtor, as well as ancillary agreements between them. UF 5. The Conflict Waiver letter implored Robert Cohen to seek the advice of counsel:

> The Firm and I advise you that you may want to seek the advice of independent counsel of your choice in connection with the Transaction and this consent and waiver. Please execute the enclosed copy of this letter in the space provided for your respective signature indicating your acknowledgment of, consent to, and waiver of any potential or actual conflicts created by my involvement in the Transaction.

*Id.*

Because Messrs. Sohaili and Weintraub had a very limited amount of time within which to obtain a loan and close the sale of the Property, Mr. Sohaili asked Robert Cohen which attorney

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

would review the loan documents, conflict waiver, and indemnification agreement for the Cohen Trust, and to whom the promissory note should be sent. Robert Cohen told Mr. Sohaili that he would be using Ezra Cohen Esq., Robert Cohen's nephew and an experienced real estate lawyer whom Mr. Sohaili knew well because he had been the in-house counsel for multiple decades years for BWH and A.C.C., a California general partnership ("ACC"), which owns the fee interest under a ground lease as ground lessor to BWH. BWH and ACC had been significant clients of Akin Gump and Mr. Sohaili. (The Cohen Trust was beneficially the majority partner in BWH and ACC; the family trust of Ezra Cohen's father, Joseph Cohen, was beneficially the minority partner in both. BWH and ACC constituted two of the most complicated and sophisticated assets owned by the Cohen Trust, and likely were worth hundreds of millions of dollars. Sohaili Decl., ¶ 14- 16.

On February 22, 2013, and consistent with Robert Cohen's instruction to Mr. Sohaili, Robert Cohen's assistant, Shingly Lee, sent an e-mail to attorney Ezra Cohen attaching copies of the loan documents (including the Conflict Waiver), and stating:

> "Hi, Ezra.
>
> RC wanted to ask if you could review these documents and call him to discuss? Hush [Sohaili] needs the docs to be signed this morning so if you could do this right away we'd appreciate it.
>
> Thanks,
>
> Shingly"

UF 9.

Mr. Sohaili relayed the direction given to him by Robert Cohen to Mr. Shlomi, who had been tasked with drafting those documents along with Mr. Weintraub's counsel. Sohaili Decl., ¶ 15. Mr. Shlomi similarly recalls that Mr. Sohaili had informed him that Robert Cohen told Mr. Sohaili that the Cohen Trust would seek legal advice from attorney Ezra Cohen in connection with the loan transaction. Shlomi Decl., ¶ 6.

On February 22, 2013, and consistent with the direction given by Robert Cohen to Mr. Sohaili, Mr. Shlomi sent copies of certain of the loan documents to attorney Ezra Cohen and Robert Cohen. At no time did attorney Ezra Cohen tell Mr. Shlomi or Mr. Sohaili that he was not providing legal advice to Robert Cohen or the Cohen Trust in connection with the transaction. UF 10. As far

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

as Mr. Sohaili and Mr. Shlomi understood, the Cohen Trust was seeking independent advice from Ezra Cohen. UF 11.

Neither Mr. Sohaili nor Mr. Shlomi have any recollection of any discussion or thought about usury. UF 14. Indeed, the issue of usury seldom – if ever – arose in any prior small transaction in which Mr. Sohaili was professionally involved. This is because the types of large financing transactions in which Mr. Sohaili was involved were always subject to some usury exemption (*e.g.*, because generally larger loans in excess of $10 million were "made or arranged by" a licensed real estate broker, or because the lender itself was licensed and regulated and therefore exempt from usury). Sohaili Decl., ¶ 17. Neither Mr. Sohaili nor Mr. Shlomi did any research on usury or discussed usury in connection with the Cohen Trust's loan to the Debtor since the Cohen Trust was understood to be represented by its own counsel and in the rush to document the loan to timely close the purchase of the property. UF 14. Akin Gump did not have any record of legal research on usury conducted by any attorney at that firm during that time period. Mr. Weintraub likewise did not think of usury or discuss the issue with his counsel in the process of providing his consent to the loan and the loan documents. *Id.*

**2. Terms of the Note**

The note from the Debtor to the Cohen Trust (the "Note") was executed by the Debtor on or about February 26, 2013. UF 2. The Note reflects a 12% rate of interest, and does not include a "usury savings clause."

The Note contains a one-way attorneys' fees clause:

> If an attorney is engaged by Lender to enforce any provision of this Note or the Deed of Trust as a result of a default thereof by Borrower, then Borrower will pay to Lender on demand all attorney fees and other costs incurred by Lender, together with interest from the date of the demand until paid at the interest rate set forth in this Note..

UF 12, 15.

Of the $2,500,000 loan amount, $1,750,000 was funded in February 2013 (directly towards the purchase of the Property), $300,000 was funded in December 2013, $300,000 was funded in February 2014, and $150,000 was funded in June 2014.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**B. <u>The Debtor's Payments to the Cohen Trust</u>**

During the approximate 10-year period between the making of the Loan and September 2022, the Debtor paid over $1.96 million in interest to the Cohen Trust on the Loan, and another $550,000 in principal payments. UF 16. These payments were funded by the other members of the Debtor (and principally the two managing members). The Debtor made such payments to the Cohen Trust until October 2022, when the Cohen Trust called the loan in breach of an oral agreement to extend its term.

Application of the payments made by the Debtor to the Cohen Trust pursuant to California usury law results in the reduction of the principal balance owed to the Cohen Trust/BJ180 to $0. *See generally* Docket No. 90, Declaration of Kailey Wright in Support of the Debtor's Objection to Claim No. 2-1 of Blue Jay 180, LLC ("Wright Decl."), Ex. 1.

**C. <u>Foreclosure Proceedings by the Cohen Trust and BJ180</u>**

In January 2023, the Cohen Trust initiated a non-judicial foreclosure on the Property by recording a Notice of Default, which alleged that the amount owing on the Loan as of December 31, 2022, was $2,816,542.45. The interest component of this amount was calculated by the Cohen Trust using a 16% rate of interest.

Since the recording of the Notice of Default, neither the Cohen Trust nor its purported successor in interest – BJ180 – has proceeded with the non-judicial foreclosure.

On June 22, 2023, BJ180 filed a Complaint in the Los Angeles County Superior Court against the Debtor and multiple other defendants, seeking a judicial foreclosure on the Property, as well as a declaration that the Loan is exempt from California's prohibition on usury (or, if not exempt, seeking a declaration that the Cohen Trust could reduce the rate to the legal limit). [Docket No. 3] (Request for Judicial Notice), Ex. A (Complaint). Since filing the Complaint in June 2023, BJ180 has done nothing to prosecute it.

The Complaint filed by BJ180 asserts only one basis for exempting the Loan from usury – section 25118 of the California Corporate Securities Law. *See* Cal. Corp. Code § 25118. As explained below, that section and the exemption embodied therein are wholly inapplicable to the loan made to the Debtor by the Cohen Trust. The exemption applicable to such real estate loans is

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

the "made or arranged by a real estate broker" and secured in whole or in part by real property. Because the Loan was not "made or arranged" by a real estate broker, it is not exempt.

### D. The Claim

On October 13, 2023, BJ180 filed the Claim. UF 17. The Claim is asserted in the amount of $2,759,775.10. In a footnote to the attachment in support of the Claim, BJ180 admits that the Note is usurious on its face:

> The interest rate is actually 12% under the Note and default interest is 4%. To avoid any needless litigation on meritless usury claims or other defenses, as well as the fact that it is doubtful the estate will be able to pay Blue Jay's secured claim in full, Blue Jay has voluntarily limited the interest at 10% for this claim only. This does not bind Blue Jay in any other forum or future bankruptcy cases and should not be construed as a waiver to seek the full amount due under the Note.

UF 18.

### E. The Claim Objection

On November 10, 2023, the Debtor filed an objection the Claim (the "Claim Objection"). [Docket No. 90.] On November 28, 2023, BJ180 filed an opposition to the Claim Objection. [Docket No. 105.] On December 13, 2023, the Court held a preliminary hearing on the Claim Objection. The Court continued the hearing on the Claim Objection to May 21, 2024.

On May 21, 2024, the Court held a status conference on the Claim Objection. At the status conference, counsel for BJ180 stated his desire to conduct extensive discovery, including five depositions (of Akin Gump, Mr. Sohaili, Mr. Weintraub, and "possibly two other depositions"). The Court agreed to allow discovery on the Claim Objection.

On May 31, 2024, the Court entered a scheduling order on the Claim Objection setting, among other things, September 30, 2024, as the last day for discovery to be completed. [Docket No. 194.]

### F. Discovery on the Claim Objection

The parties conducted fairly limited discovery on the Claim Objection. The Reorganized Debtor served interrogatories and requests for production of documents on BJ180. *See generally* [Docekt 218] Zur Discovery Decl. The Reorganized Debtor served a subpoena duces tecum on Akin Gump, which produced numerous documents over a several-month period. The Reorganized

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Debtor also served subpoenas (for documents and depositions) on Ezra Cohen and three of the trustees of the Cohen Trust – Ernest Cohen, Eleda Cohen, and Michelle Lerman. Ezra Cohen produced a very limited set of documents and appeared for a deposition on September 30, 2024. The Cohen Trustees failed to appear at their depositions and served objections over a month following the deadline to do so. This is the subject of a pending motion for contempt. [Docket No. 222]

BJ180 conducted little to no discovery, serving requests for production of documents on the Reorganized Debtor and an "informal" subpoena on Akin Gump (notice of which it did not provide to the Reorganized Debtor). BJ180 took no depositions.

## III. SUMMARY JUDGMENT STANDARD

The Claim Objection constitutes a contested matter. Under Federal Rule of Bankruptcy Procedure 9014(c), various rules otherwise applicable to adversary proceedings are applicable to contested matters. One such rule is Federal Rule of Bankruptcy Procedure 7056. Fed. R. Bankr. P. 9014(c) ("Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply [to a contested matter]: . . . 7056 . . . .").

Federal Rule of Civil Procedure 56 ("Rule 56"), made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, mandates that a summary judgment motion be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56 (a). Under this standard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases in original). A material fact is one "that might affect the outcome of the suit under the governing law," and a genuine dispute exists only if "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party has the initial burden of demonstrating that summary judgment is proper and must identify the pleadings, depositions, affidavits or other evidence demonstrating the absence of any genuine disputed issue of material fact. *See Yzewig v. Hearst Corp.*, 521 F.2d 1129, 1133

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

(9th Cir. 1975); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must support its motion with credible, admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) ("Celotex"); *see also* Fed. R. Civ. P. 56 (c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). The moving party "does not necessarily need to put on evidence to negate [its] opponent's claim; [it] may simply point to portions of the pleadings, admissions, answers to interrogatories, and depositions which, along with any affidavits, show the absence of a genuine issue of material fact." *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (footnote omitted). "The opposing party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan*, 929 F.2d at 1409.

## IV. THE COURT SHOULD ENTER SUMMARY JUDGMENT SUSTAINING THE DEBTOR'S OBJECTION TO THE CLAIM

### A. The Loan Is Usurious on Its Face

The Loan made by the Cohen Trust to the Debtor is usurious on its face under California law because it charges an interest rate of 12%. UF 12, 20. "[T]he California Constitution sets a maximum annual interest rate of seven percent on loans and forbearances, but allows parties by written contract to set the interest rate at up to 10 percent, or at the level of the Federal Reserve's discount rate plus 5 percent, on loans or forbearances involving real property. *WRI Opportunity Loans II, LLC v. Cooper*, 154 Cal. App. 4th 525, 533 (2007) (citing Cal. Const., art. XV, § 1). The essential elements of a claim of usury are: "(1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Id.* (quoting *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994)).

"The element of intent is narrow. The intent sufficient to support the judgment of usury does not require a conscious attempt, with knowledge of the law, to evade it. The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete." *Ghirardo*, 8 Cal. 4th at 798. As the California Supreme Court made clear nearly 70 years ago, "the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete." *Thomas v. Hunt Mfg. Corp.*, 42 Cal. 2d 734, 740 (1954). Indeed, the intent of the parties is only relevant when the nature of the transaction (*e.g.*, whether it is a loan or a sale) is in question:

> If the character of a transaction were in doubt, much aid would be had in determining its true nature by discovering the intent behind the scheme. But where the character, scope, and general purpose and design is found, intent becomes more or less immaterial. The old truism holds that one is presumed to intend to do that which in fact he actually does. **If one lends money to another at an usurious rate, on a straight out-and-out loan, the fact that he had no manifest intent to violate the law would be of no consequence. Summing up, intent is material in determining the nature of a transaction; but the true nature being shown or admitted, the intent with which the act was performed is beside the inquiry**.

*Maze v. Sycamore Homes, Inc.*, 230 Cal. App. 2d 746, 750-51 (1964) (quoting *Wood v. Angeles Mesa Land Co.*, 120 Cal. App. 313, 324 (1932)) (emphasis added). As such, "[w]hen the transaction violates the usury law the intent of neither of the parties is material." *Id.*, at 750 (citation omitted).

Here, there is no dispute that the Loan was, in fact, a loan. There is no dispute that the interest rate on the Loan is 12%, and that the Debtor paid interest to the Cohen Trust for approximately 10 years. UF 12, 16. This establishes, conclusively, the intent element for the Reorganized Debtor's usury defense. That the Cohen Trust intended to charge a usurious interest rate is clear from the terms of the Note itself. UF 21. Whether the Cohen Trust "intended" to violate the law is irrelevant, so long as it is shown that it intended to receive 12% interest, which it did. "The true nature [of the transaction] being shown or admitted, the intent with which the act was performed is beside the inquiry." *Maze*, 230 Cal. App. 2d at 751.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

### B. There Is No Factual or Legal Basis for Estoppel

#### 1. As a Matter of Law, a Borrower Is Not Estopped from Asserting Usury as a *Defense* Unless It Engaged in Fraudulent Conduct

There is no legal or factual basis for estoppel to bar the Reorganized Debtor from asserting usury as a defense (*i.e.*, as opposed to utilizing usury to seek treble damages from the Cohen Trust), because the Debtor clearly did not defraud the Cohen Trust, and BJ180 does not claim otherwise. UF 22. "[T]he courts have . . . regularly held a borrower and a lender are not *in pari delicto* in a usurious transaction and the lender may not assert an estoppel against the borrower simply because the borrower took the initiative in seeking the loan, knew of the usurious nature of the transaction, and paid usurious interest without protest." *Buck v. Dahlgren*, 23 Cal. App. 3d 779, 787 (1972). To estop a borrower from asserting usury as a defense, the borrower must have committed a fraudulent act such as surreptitiously inserting usurious language into the contract or otherwise defrauded the lender. *Martin v. Ajax Construction Co.*, 124 Cal. App. 2d 425, 431 (1954); *see also Jue v. Bass*, 299 F.2d 374 (9th Cir. 1962) ("[I]t is only when a borrower fraudulently inserts a usurious interest rate in order to later defeat recovery against him, that he may be estopped from using the defense of usury."); *Heald v. Friis-Hansen*, 52 Cal. 2d 834, 837 (1959) (in bank) ("In the absence of fraud by the borrower, the parties to a usurious transaction are not in pari delicto, and, where a loan agreement calls for usurious interest, the borrower may recover any interest paid."); *White v. Seitzman*, 230 Cal. App. 2d 756, 764 (1964) ("To deny the recovery of usurious interest paid simply because treble damages are not allowed as a punitive measure would shift the penalty for a usurious contract onto the borrower instead of the lender which is patently contrary to the law of this state.").[2]

BJ180 does not contend that the Debtor defrauded the Cohen Trust in connection with the Loan, and has presented no evidence suggesting the presence of any fraud. UF 19. In response to Interrogatory No. 11, which stated that if BJ180 "contend[s] that the DEBTOR defrauded the COHEN TRUST or Robert Cohen in connection with the LOAN, state all facts upon which [it]

---

[2] By contrast, where the borrower defrauded the lender, the borrower not only is estopped from claiming treble damages, but also from utilizing usury as a defense (*i.e.*, recovering usurious interest paid to the lender). *See Buck v. Dahlgren*, 23 Cal. App. 3d 779, 789 (1972) (concluding that, because borrower defrauded the lender, he was "properly estopped from recovering both the amount of usurious interest paid and treble damages thereon").

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

bases [its] contention," BJ180 admitted that it is not contending that the Debtor defruaded the Cohen Trust in connection with the making of the Loan. ("The Interrogatory also seeks information not relevant to the subject matter of this proceeding, not admissible in evidence, and not reasonably calculated to lead to the discovery of admissible evidence, <u>as this is not a proceeding to adjudicated [sic] or determine whether the Cohen Trust was defrauded by the Debtor in connection with the Loan</u>.") (emphasis added). *Id.*

Because BJ180 does not contend that the Debtor defrauded the Cohen Trust (because no such fraud exists), then as a matter of law, the Debtor cannot be estopped from utilizing usury as a defense (*i.e.*, to apply usurious interest payments to principal) **even if BJ180's factual allegations were true (they are not) or supported by evidence (they are not).** UF 22.

**2. There Is No Basis for Estoppel Against the Debtor**

As explained above, the Court can and should dispose of BJ180's estoppel argument as a matter of law, because estoppel bars a borrower's use of usury as a defense <u>only</u> when the borrower defrauded the lender, and BJ180 admits that it does not contend that the Debtor engaged in any fraud in connection with the Loan.

That one of the Debtor's managing members – Mr. Sohaili – was an attorney at the time of the making of the Loan does not change this result. Estoppel is not warranted even if a borrower's counsel incorrectly advises the lender that the loan is not usurious and the lender relies upon that advice. *See McClung v. Saito*, 4 Cal. App. 3d 143, 152 (1970) (allowing borrowers to utilize usury defense despite that they provided the "guiding hand in the transaction" and, "**through the advice of their attorney, led [the lender] to believe that the transaction was legal**"). Nor does it matter that the borrower or its agent drafted the loan documents. *See Golden State Lanes v. Fox*, 232 Cal. App. 2d 135, 140-41 (1965) ("Defendants argue that because plaintiff initiated the transaction and because plaintiff's agent, Cliff Wolfe and Associates, worked out the arrangement between the parties, plaintiff may not be heard to complain. These facts are irrelevant to usury, for it makes no difference whether the borrower or the lender takes the initiative in the transaction, or prepares the instrument involved. If a loan is usurious, the law applies."); *Martin v. Ajax Const. Co.*, 124 Cal. App. 2d at 431 ("The findings that appellants solicited the money and that they prepared the contract

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

for its repayment with interest at 100 per cent per year do not diminish the rigor of the usury. An illegal contract cannot have the vital spark of legality infused into it by the mere hand of the man who subsequently asserts its nullity.”).

Even if Mr. Sohaili suggested the interest rate on the Loan (he did not), drafted the Note (he did not), or suggested or told Robert Cohen that the Loan was not usurious (he did not), there would be no basis for applying estoppel and allowing the Cohen Trust and BJ180 to profit from a usurious loan transaction.

As noted above, to estop the Reorganized Debtor from utilizing usury as a defense, BJ180 must show that the Debtor engaged in some fraudulent conduct. It has not provided any evidence to that effect and will not be able to do so. It is undisputed that Robert Cohen – an exceedingly sophisticated businessperson who engaged in hundreds of millions of dollars' worth of real estate and other transactions – proposed the terms of the Loan. Sohaili Decl., at ¶ 11. He knew what he was doing. He was told clearly and in writing that Akin Gump and Mr. Sohaili were not going to be representing him or the Cohen Trust in the transaction, and that he should get independent legal advice. And he did just that (or, at least, attempted to do so). UF 5, 9-11.

The Debtor did not provide the “guiding hand” in the transaction. The Debtor was not even represented by counsel. The remaining parties to the transaction – Mr. Weintraub, Mr. Sohaili, and the Cohen Trust – were represented by their own separate counsel – namely, Ms. Allen, Akin Gump, and attorney Ezra Cohen, respectively. UF 8. The Debtor also did not provide any advice to the Cohen Trust about the Loan or any aspect thereof. Indeed, the Conflict Waiver letter specifically implored Robert Cohen to seek the advice of counsel concerning the Loan transaction, which Robert Cohen at least attempted to do when his assistant reached out to attorney Ezra Cohen. UF 6, 9.

For their part, neither Mr. Sohaili nor Mr. Weintraub ever even considered usury. UF 14. They agreed to the interest rate demanded by Robert Cohen because they had to close the transaction quickly or would risk losing the Property and their deposit. It was not their responsibility to provide legal advice to the Cohen Trust and therefore did not give any consideration to usury. Indeed, Mr. Sohaili could not be expected to think of usury given the type of financing work to which he was accustomed in his legal career – namely, large transactions with exempt lenders or involving brokers

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

– and in which usury simply is not an issue. Sohaili Decl., ¶ 17. That neither Mr. Sohaili nor Mr. Weintraub "hid the ball" or "sprung" usury on the Cohen Trust is clear from the fact that they paid nearly $2 million in interest over a nine-year period. Why would the Debtor fraudulently induce the Cohen Trust to make a usurious loan, pay over $2 million in interest on that loan, and wait nine years to raise usury (while risking losing the Property and millions of dollars in a foreclosure or bankruptcy)? BJ180 has no evidence that the Debtor deceived the Cohen Trust or defrauded it in connection with the making of the Loan, because it did not happen. UF 19. Simply put, there is no basis for estoppel.

Indeed, application of estoppel against the Reorganized Debtor makes no sense vis-à-vis Mr. Weintraub. Mr. Weintraub – who indirectly owns every bit as much of a beneficial interest in the Reorganized Debtor as does Mr. Sohaili – is not a lawyer, had no prior relationship with Robert Cohen or the Cohen Trust, and is not alleged by BJ180 to have had anything to do with the preparation of the loan documents (indeed, Mr. Weintraub was represented in the underlying loan transaction by his own counsel, who had no dealings with Robert Cohen or the Cohen Trust). Yet BJ180 seeks to apply estoppel against Mr. Weintraub to allow the Cohen Trust to charge him usurious interest. (Additionally, there is a passive 5% member of the Debtor – Greg Fienberg – who had nothing to do with the making of the loan but whose interests clearly would be harmed by allowing the Cohen Trust to charge the Debtor usurious interest.)

BJ180's entire estoppel theory is based on a misreading and mischaracterization of one case – *Lakeview Meadows Ranch v. Bintliff*, 36 Cal. App. 3d 418, 111 (1973). *Bintliff* has no application here.

In *Bintliff*, the plaintiff/borrower purchased land from defendant/lender (Bintliff) for $2,000,000, of which $1,420,000 was seller-financed. The interest rate on the seller note was 6%. The plaintiff/borrower made a few payments of principal on the seller note, and then requested an extension of time to make the next principal payment of $510,000. Bintliff agreed to the modification, provided that plaintiff/borrower would immediately pay $100,000 plus all interest due, the interest rate on the entire unpaid principal balance of $1,020,000 would increase from 6% to 9%, the remaining $410,000 principal payment would be deferred for approximately five months.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

The agent of plaintiff/borrower (Zerner), a licensed attorney, drafted a modification agreement to that effect. Plaintiff/borrower paid $100,000 in principal and two interest payments of $32,455 and $44,190, but failed to make any other payments until Bintliff instituted foreclosure proceedings. Thereafter, plaintiff/borrower sued Bintliff to recover as usurious the interest that it paid after executing the modification agreement. *Bintliff*, 36 Cal. App. 3d at 421-22.

The plaintiff/borrower argued that, even though the modification agreement clearly reflected a non-usurious interest rate (9%), the interest charged should be calculated based not on the entire principal balance then due ($1,020,000), but instead only on the $410,000 installment for which defendant lender gave a 5 ½ month extension. Under that calculation, the interest rate was actually 18.7%. *Id.* at 422-23.

The trial court ruled in favor of the defendant/lender, and the Court of Appeal affirmed. The court reasoned that the modification agreement itself clearly reflected a non-usurious interest rate of 9%, and that the interest charged was not only on the $410,000 installment, but instead on the entire $1,020,000 outstanding balance. The court further agreed with the trial court's finding that – consistent with the terms of the modification agreement itself (which required interest at 9%) – there was no intent by Bintliff to charge a usurious interest (*i.e.*, interest at a rate different from what the agreement reflected). *Id.* at 424. In *dicta*, the court also agreed with the trial court's finding that plaintiff/borrower is estopped from arguing that the agreement that its agent (an attorney) drafted should be interpreted differently from its plain terms, because the defendant/lender clearly intended to charge interest at only 9% and communicated as much to plaintiff/borrower. *Id.* at 424-25.

*Bintliff* is inapposite. Most significantly, the court found that the interest rate in the modification agreement in question was not usurious. Indeed, the borrower in that case took the position that the interest rate stated in the modification agreement at issue in that case (9%) was not the actual interest rate charged. The borrower's argument rested on a post-hoc interpretation of the transaction that was inconsistent with the agreement that its own agent drafted. Effectively, the borrower had argued that, despite that the lender instructed the borrower's agent to draft an agreement requiring interest at 9% (precisely so as not to violate the usury laws), the agreement secretly required interest at 18.7%. Put differently, the borrower's usury argument required it to

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

acknowledge that it tricked the lender into a signing a usurious modification agreement that specified an interest rate that the borrower secretly believed was not the actual interest rate charged. No such facts are remotely present here. Even accepting BJ180's unsupported (and false) story, there is no allegation or evidence that the Cohen Trust intended to charge anything other than 12% interest, which is plainly usurious, or that the Cohen Trust was concerned about the legality of the interest rate it demanded. No one "tricked" the Cohen Trust into demanding a 12% interest rate. Nor is there any dispute regarding what the Note says or means. *See Stock v. Meek*, 35 Cal. 2d 809, 819 (1950) (rejecting estoppel argument because "[t]here was no attempt to insert secretly a usurious rate of interest in order to avoid the payment of any interest or to take advantage of the treble damage provisions of the Usury Law"). *Bintliff* bears no resemblance whatsoever to this case.

Finally, *Bintliff* does not stand for the proposition that a borrower is estopped from utilizing the usury defense because its attorney-agent did not tell the lender that the rate of interest is usurious. As noted above, a borrower is not estopped from utilizing the usury defense simply because it knows that the loan is usurious: "[T]he courts have also regularly held a borrower and a lender are not *in pari delicto* in a usurious transaction and the lender may not assert an estoppel against the borrower simply because the borrower took the initiative in seeking the loan, knew of the usurious nature of the transaction, and paid usurious interest without protest." *Buck v. Dahlgren*, 23 Cal. App. 3d 779, 787 (1972).[3]

In sum, absent fraud, estoppel does not apply to bar a borrower from raising usury as a defense. BJ180 admits that it is <u>not</u> alleging that the Debtor committed any fraud in obtaining the Loan from the Cohen Trust. In fact, there is absolutely no basis or evidence of any fraud. The evidence plainly demonstrates that neither Mr. Sohaili nor Mr. Weintraub ever thought of usury or made any representations to the Cohen Trust. Mr. Sohaili did not advise Robert Cohen or the Cohen Trust about the loan transaction, was not obligated to advise Robert Cohen or the Cohen Trust about the loan transaction, and Robert Cohen actively sought the counsel of his nephew, attorney Ezra

[3] In *Buck*, the court concluded that the borrower was estopped from utilizing the usury defense because he defrauded the lender (a native of Sweden who did not speak much English and could not write English) into providing him a loan that the borrower never intended to repay. *Buck*, 23 Cal. App. 3d at 789. No such fraud exists or is even alleged here.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Cohen, in connection with the loan transaction, and told as much to Mr. Sohaili. BJ180 cannot prove otherwise. Accordingly, estoppel does not apply.

**C. <u>The Loan Is Not Subject to any Usury Exemptions</u>**

BJ180 asserts that the Loan is subject to only one exemption – that found in section 25118 of the Corporate Securities Law for certain "evidences of indebtedness" and the "purchasers or holders thereof." As explained below, that exemption plainly applies only to certain securities transactions – which the Loan clearly is not – and therefore does not apply. The Loan is not subject to any other usury exemptions, and BJ180 does not argue otherwise. UF 23.

**1. Usury Exemptions Generally**

California Constitution, article XV, section 1 limits the interest rate for a 'loan or forbearance' of money not primarily for personal, family or household purposes. Article XV contains various exemptions to the usury restrictions, including obligations of, loans made by, or forbearances of, any building and loan association . . ., or to any ... industrial loan companies . . ., or any credit union[ ] . . . or any duly licensed pawnbroker or personal property broker, or any loans made or arranged by any person licensed as a real estate broker . . ., or any bank . . ., or any other class of persons authorized by statute." *Moore v. Hill*, 188 Cal. App. 4th 1267, 1279-80 (2010) (quoting Cal. Const., art XV, § 1).

"[A]rticle XV [of the California Constitution] speaks in terms of 'exempted classes of persons' rather than 'exempted transactions.'" *Agapitov v. Lerner*, 108 Cal. App. 4th 830, 837 (2003). "The exempted classes of persons . . . belong to those classes, and qualify for an exemption, by virtue of their licenses[,]" and therefore must act within the scope of that license in order to enjoy the benefit of exemption. *Moore*, 188 Cal. App. 4th at 1282 n.13 (citing *Agapitov*, 108 Cal. App. 4th at 837-38); *see also Agapitov*, 108 Cal. App. 4th at 836-37 (discussing regulation of pawnbrokers that are exempt from usury restriction). Indeed, each of the exempted classes enumerated in article XV is subject to some form of regulatory framework under California or federal law.

The California Constitution authorizes the Legislature to create additional classes of exempt persons. However, the Legislature cannot enact laws that conflict with the California Constitution: "The provisions of [article XV] shall supersede all provisions of [the California] Constitution and

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

laws enacted thereunder in conflict therewith." This, of course, makes sense –the California Constitution can only be amended with the approval of the electorate.

When voters wanted to amend the California Constitution to create additional exemptions, they have done so. In 1979, the voters of California approved "radical revisions" in the California Constitution, including the creation of a usury exemption for "any loans made or arranged by any person licensed as a real estate broker . . . and secured in whole or in part by liens on real property." *See Stickel v. Harris*, 196 Cal. App. 3d 575, 581 (1987) (quoting Cal. Const., art. XV, § 1). That exemption is the one widely used to exempt from usury simple real estate loans in one-on-one negotiated transactions by private lenders such as the Cohen Trust. Clearly, the Cohen Trust is not entitled to this usury exemption specifically provided for private real estate lenders, because the Loan was not made or arranged by a real estate broker.

Finally, because the usury laws are designed to "protect against the oppression of debtors through excessive interest rates charged by lenders, the constitutional usury provision protecting borrowers should be read broadly, *and exemptions should be read strictly*." *Agapitov*, 108 Cal. App. 4th at 838 (emphasis added).

**2. Section 25118(b) Does Not Apply to the Loan**

As explained in detail in Section IV.C.3. below, the exemption upon which BJ180 relies – the usury exemption for certain securities transactions found in section 25118(b) of the California Corporate Securities Law of 1968 – does not apply to the Loan. That section applies only to lenders and issuers who <u>issue</u> securities in accordance with the terms of the Corporate Securities Law, including section 25118, and the Loan clearly is not a security. In other words, section 25118 does not apply to simple privately negotiated one-on-one secured real estate loans. To qualify for the section 25118 exemption under the Corporate Securities Law, the loans must be part of a securities issuance. The distinction between the usury exemptions for persons participating in securities transactions (typically involving bonds, debentures, and other investment-type contracts) and the usury exemptions for secured real estate loans (*i.e.*, "whole" loans negotiated one-on-one between borrowers and lenders) is not merely academic. The latter is addressed by a Constitutional amendment – namely, the real estate broker exemption for real estate loans secured by real property

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

– that the California Legislature simply did not supersede (and could not have superseded) by its enactment of section 25118 concerning securities.

### 3. The Section 25118 Exemption Applies Only to Issuers of Securities

That section 25118 exempts from usury only lenders and issuers participating in certain securities transactions is clear from (1) the plain language of the statute (which speaks of "issuers" of "evidences of indebtedness" – securities terms of art used throughout the Corporate Securities Law), and (2) the legislative history of section 25118.

#### (a) The Plain Language of Section 25118 Makes Clear that It Applies Solely to Lenders and Issuers Dealing in Securities

Section 25118 of the California Corporations Code provides, in relevant part:

> (a) An evidence of indebtedness **issued** by an entity or guaranteed by an entity that is an affiliate (as defined in Section 150) of the borrower that, on the day the evidence of indebtedness issued or guaranty is first **issued** or entered into, has total assets of at least two million dollars ($2,000,000) according to its then most recent financial statements, and the purchasers or holders thereof, shall be exempt from the usury provisions of the California Constitution. . . .
>
> (b) Any one or more evidences of indebtedness, and the purchasers or holders thereof, shall be exempt from the usury provisions of the California Constitution if either of the following applies:
>
> > (1) The evidences of indebtedness aggregate at the time of **issuance** at least three hundred thousand dollars ($300,000) in original face amount, or, if the evidences of indebtedness are purchased with original **issue** discount, they are purchased for an aggregate purchase price at the time of **issuance** of at least three hundred thousand dollars ($300,000).
> >
> > (2) The evidences of indebtedness are **issued** pursuant to a bona fide written commitment for the lending to the **issuer** of at least three hundred thousand dollars ($300,000), or the provision of a line of credit to the **issuer** in a principal amount of at least three hundred thousand dollars ($300,000). . . .

Cal. Corp. Code § 25118(a)-(b) (emphasis added).

By its terms, section 25118 applies only to an evidence of indebtedness that is "issued" by an "issuer." *See* Cal. Corp. Code § 25118(a) (referring to "an evidence of indebtedness *issued* by an entity"); § 25118(b) (referring to "evidences of indebtedness" that are "*issued* pursuant to a bond fide written commitment for the lending to the issuer"); § 25118(f) (stating that the exemptions

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

created by section 25118 shall only be available where "the lender and the *issuer*" meet certain criteria). This makes sense, as section 25118 appears in Chapter 2 of Part 2 of the Corporate Securities Law of 1968 (*i.e.*, sections 25110-25118), entitled "Issuer Transactions." Indeed, there are only eight subsections in the Corporate Securities Law that deal with "Issuer Transactions" and section 25118 is the last in a series of three companion statues that deal with exempting issuers from usury. *See* Cal Corp. Code §§ 25116, 25117, and 25118.

The term "issuer" used in section 25118 and elsewhere in the Corporate Securities Law is not a colloquial term as BJ180 seems to suggest. Rather, it is a term defined in the Corporate Securities Law and is tied specifically to *securities*. Section 25010 of the Corporations Code provides (with certain exceptions not relevant here) that "[i]ssuer means any person who **issues or proposes to issue any security** . . . ." Cal. Corp. Code § 25010 (emphasis added).

Likewise, the term "evidence of indebtedness" used in section 25118 plainly refers to a security, not merely any type of debt. **"'[E]vidence of indebtedness' is a term of art that usually connotes an original instrument that itself may be traded [as a security], not merely a reference to the existence of debt**." *Davis v. Chase Bank U.S.A., N.A.*, 453 F. Supp. 2d 1205, 1208 (C.D. Cal. 2006) (emphasis added); *Moreland v. Dept. of Corp.*, 194 Cal. App. 3d 506, 512 (1987) (because California's securities law is modeled after federal securities law, federal authority construing federal law is persuasive authority in interpreting state law); *Hamilton Jewelers v. Dept. of Corp.*, 37 Cal. App. 3d 330, 389-90 (1974) (noting that the California Corporate Securities Law includes definitions copied from the federal securities statutes, and stating that decisions interpreting the federal definitions are authoritative in cases addressing the California definitions); *see also Tai-Si Kim v. Kearney*, 838 F. Supp. 2d 1077, 1095 (D. Nev. 2012) (rejecting argument that secured real estate loan between private individuals constituted "evidence of indebtedness" for purposes of federal securities statute).

Both "evidence of indebtedness" and "issuer" are used in the companion statutes (exempting certain issuers from usury protections) to section 25118, namely – section 25116 (usury exemption for issuer securities where the issuers have obtained a permit) and section 25117 (usury exemption for listed or rated securities that are evidences of indebtedness) of the Corporate Securities Law. In

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

both sections, "evidence of indebtedness" clearly refers to a security. *See* Cal. Corp. Code § 25116(a) ("An evidence of indebtedness issued pursuant to a qualification . . . and the purchasers or holders thereof, shall be exempt from the usury provisions . . . subject to compliance by the issuer and purchaser with the terms and requirements that may be imposed by the commissioner as a condition of the qualification . . . ."); § 25117 ("An evidence of indebtedness, and the purchasers or holders thereof, shall be exempt from the usury provisions . . . if (1) the evidence of indebtedness is rated . . . or (2) the issuer thereof (A) has any security listed or approved for listing upon notice of issuance on a national securities exchange . . . or (B) meet each of the following requirements: (i) The issuer is a corporation which is subject to Section 13 of the Securities Exchange Act of 1934. (ii) The issuer had total shareholders' equity of at least one million dollars . . . .").

Under established rules of statutory interpretation, the meanings of the terms "evidence of indebtedness" and "issuer" can be understood by considering their use in sections 25116 and 25117, which clearly are companion statutes to section 25118. *See People v. Tran*, 61 Cal. 4th 1160, 1167-68 (2015) ("It is an established rule of statutory construction that similar statutes should be construed in light of one another and that when statutes are in pari materia similar phrases appearing in each should be given like meanings. Two statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object.") (citations and quotations omitted); *In re Bittaker*, 55 Cal. App. 4th 1004, 1009 (1997) ("To understand the intended meaning of a statutory phrase, we may consider use of the same or similar language in other statutes, because similar words or phrases in statutes in pari materia ordinarily will be given the same interpretation."). The terms "evidence of indebtedness" and "issuer" clearly refer to securities in sections 25116 and 25117 (which statutes deal specifically with exempting from usury protections non-natural person borrowers who <u>issue</u> evidences of indebtedness) and also refer to non-natural borrowers who issue evidences of indebtedness as securities in section 25118.

Clearly, the section 25118 exemption allows non-natural entities (*i.e.,* those entities capable of issuing securities) to issue certain evidences of indebtedness that constitute securities and that are exempt from registration under the securities laws, but remain subject to securities regulations (*e.g.*,

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

the anti-fraud provisions of the federal and California securities laws). This is precisely way the "sophistication" requirements in section 25118 mirror the sophistication requirement in the Corporate Securities Law (under section 25102(f)) for the issuance of securities exempt from permits.

In sum, the plain language of section 25118 makes clear that the usury exemption embodied therein applies only to securities transactions, and not to ordinary secured real estate loans between private individuals or entities. This sensible interpretation of section 25118 also is supported by its legislative history.

**(b) The Legislative History of Section 25118 Makes Clear that It Applies Solely to Lenders and Issuers Dealing in Securities**

That section 25118 only provides an exemption from usury protections for a very narrow and limited class of borrowers – *i.e.*, non-natural borrowers who issue certain securities transactions (and not "whole" secured real estate loans in excess of $300,000 negotiated on a one-on-one basis between private entities) – not only is made clear by the plain language of the statute, but also by its legislative history.

Section 25118 was enacted in 2000. Prior to that time, there was a widely-used but narrow exemption to usury found in section 25116, which clearly applies to securities issued pursuant to a permit obtained from the California Department of Corporations:

> [Section 25116] exempts evidences of indebtedness from the state usury provisions subject to compliance by the issuer and purchaser according to requirements imposed by the Department of Corporations (DOC). . . One of these requirements is obtaining a permit for this indebtedness . . . by the DOC under Section 25113. Qualifications of securities under [section 25116] become effective upon the DOC issuing a permit authorizing the issuance of such securities.

*See* Ex. 4, at p. 12 (Legislative Analysis prepared for the Assembly Committee on Banking and Finance for Hearing on January 18, 2000, to consider AB244, the bill that ultimately became section 25118). As such, under section 25116, an issuer of certain securities (and a lender to the issuer of such securities or a purchaser of such securities) would be exempt from usury laws as long as the issuer obtained a permit from the DOC.

The proposal to add section 25118 to the Corporations Code originated with the Business

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Law Section of the State Bar of California, the sponsor of AB244. In its memorandum, *Proposed Usury Exemption - New California Corporations Code § 25118*, the sponsor explained clearly that the new law became necessary only because of a federal law that came into existence in 1996, which would hamper lenders' (and issuers') ability to rely on the permit-based usury exemption in section 25116:

> Corporations Code Section 25116 exempts indebtedness issued pursuant to a permit under Section 25113 or 25120, and the purchasers of that indebtedness, from the usury law. Until the National Securities Markets Improvement Act of 1996 (amending 15 U.S.C. § 77r and other provisions of existing federal securities law) ("NSMIA") went into effect, lenders to [start-up companies, including many of the high-tech and bio-tech companies located in Silicon Valley or Southern California] could rely on a permit issued to the borrower under California Corporations Code ("Corp. Code") § 25113 or § 25120 for the issuance of the debt. NSMIA, however, pre-empts state laws regarding registration or qualification of the issuance of "covered securities", a term that includes, among other things, all securities issued in transactions exempt from registration under the Securities Act of 1933 by reason of Rule 506. Many lenders who previously would have relied on a permit issued under the Corp. Code are now reluctant to do so, since California's authority to issue such a permit with respect to a large number of transactions is now in question.
>
> Moreover, the requirement that a permit be obtained in private transactions such as these, which virtually always involve knowledgeable parties capable of protecting their own interests, imposes additional costs and delay upon the parties--making it more difficult for small companies to obtain debt financing--while doing little to protect the public interest.

*See* Ex. 4, p. 2 (Aug. 21, 1998 Memorandum from Business Law Section, Legislative Chair, to Director of Research, State Bar of California (the "Sponsor's Memo")).

Indeed, the Sponsor's Memo made clear that the new exemption would apply to loans **<u>not</u>** secured by real property:

*Id.* (emphasis added). The Sponsor's Memo explained that the proposed statute "would provide an exemption from the usury law for the purchasers of specified evidences of indebtedness without requiring that the issuer of the debt obtain a permit under the Corp. Code, so as to eliminate the time and expense of applying for an obtaining a permit . . . [and] the risk that the issuance of a permit, if found to have been preempted by [the NSMIA], would be of no legal effect in protecting such a lender against a defense of usury." *Id.*

In its September 5, 2000 letter to then-Governor Gray Davis asking that he sign the bill, the sponsor of the bill explained that the "purpose of the bill is to provide a means for small and start-

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

up companies to obtain short-term debt financing now that the [NSMIA] has pre-empted the procedure that was previously utilized (i.e., utilizing the exemption found in [section] 25116, by obtaining a permit under Corporations Code §§25113 or 25120)." Ex. 4, p. 8.

The Enrolled Bill Report dated September 5, 2000 similarly makes clear that the bill applies only to securities:

> The Department of Corporations ("Department") administers and enforces various laws that are designed to protect the public from unfair transactions involving the making of loans (e.g., the California Finance Lenders Law) <u>and the sale of securities such as an evidence of indebtedness or other debt security</u> (e.g., the Corporate Securities Law of 1968). Thus, the Department's interest in AB 244 is limited to the bill's potential impact on borrowers of loans and purchasers of debt securities.
>
> Article 15 of the State Constitution protects the public from usurious interest rates by providing a ceiling on the rate of interest that may be charged by a lender. Article 15 exempts certain transactions and persons from the usury provisions, and allows the Legislature to create additional exemptions by statute. The Legislature has created several exemptions for persons operating under a regulatory scheme including, but not limited to, capital access companies (e.g., venture capital firms), securities broker-dealers, and finance lenders. The Legislature has also exempted certain regulated transactions by statute, such as the issuance of an investment-grade debt security or a debt security qualified (reviewed and approved) by the Department. . . .
>
> The purpose of AB 244 is to enable sophisticated persons to arrange for venture capital without the need for usury protections.

The legislative history of section 25118 makes crystal clear – consistent with the plain language of the statute and its use of securities-centric terms of art such as "issuer" and "evidence of indebtedness" – that it applies solely to a narrow class of lenders and issuers participating in securities transactions.

Indeed, BJ180's argument – that the Legislature effectively gutted the California Constitution's prohibition against usury by enacting a blanket exemption for single one-on-one negotiated whole loans over $300,000 as long as the borrower was a non-natural person – strains credulity. As explained above, Article XV of the California Constitution authorizes the California Legislature to create exemptions for specific classes. That is precisely what section 25116 and 25118 do – they provide usury exemptions for a specific class, namely, non-natural person issuers who engage in securities transactions for which a permit is obtained or otherwise not required because the parties are deemed to be sufficiently sophisticated. Section 25117 provides a similar

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

exemption for issuers who issue publicly-issued evidences of indebtedness for which there is no permit required. Not only is it highly unlikely that the California Legislature "slipped in" to the Corporate Securities Law a massive usury exemption applicable to all loans, but that it did so in contravention of the California Constitution. Article XV, section 1 of the California Constitution specifically provides that "[t]he provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith." If the California Legislature had intended to exempt from the constitutional prohibition against usury any and all borrowers who are not natural persons for traditional loans negotiated one-on-one with private lenders over $300,000, it would have proposed an amendment to the California Constitution that would have had to be approved by the voters. The California Legislature would not have inserted the statute into the Corporate Securities Law (and the subsection on "issuer transactions"), it would not have used securities terms such as "issuer" and "evidence of indebtedness," and it would have been explicit in its intent that it really was taking usury protection away from borrowers who have nothing to do with the Corporate Securities Law of 1968.

**4. The Private Real Estate Loan Made by the Cohen Trust Is Not a Security**

The usurious real estate loan made by the Cohen Trust to the Debtor is not exempt under section 25118(b) because the Debtor is not and never has been an "issuer" and the Loan is not a security. Section 25019 of the Corporations Code defines a "security" by listing an expansive number of instruments and transactions, including "any note" or "investment contract." This expansive list, however, is not applied literally. *People v. Figueroa*, 41 Cal. 3d 714, 734 (1986). That a note is involved does not necessarily make a transaction the sale of a security. Rather, "the 'critical question' the courts have sought to resolve in these cases is whether a transaction falls within the regulatory purpose of the law regardless of whether it involves an instrument which comes within the literal language of the definition." *Id.* at 735.

In *People v. Black*, 8 Cal. App. 5th 889 (2017), the California Court of Appeal held that an unsecured promissory note between two private parties was not a security because the deal was an individually negotiated, one-on-one transaction with an absolute promise of repayment, and there

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

was no indication that the arrangement could have been traded publicly. *See also Great W. Bank & Trust v. Kotz*, 532 F.2d 1252, 1259 (9th Cir. 1976) ("A note given to a bank in the course of a commercial financing transaction is not generally a security within the meaning of the federal securities acts. To expand the reach of those acts to ordinary commercial loan transactions would distort congressional purpose as we interpret it.").[4]

Here, similar to the loan at issue in *Black*, the Loan is an individually-negotiated, one-on-one transaction by which the Cohen Trust was promised to be repaid (with interest) regardless of whether a profit was ever to be made, and received a lien on real property, the value of which sufficiently secured the amount of the Loan. That the Loan was secured by collateral makes clear that it is not a security. *See People v. Figueroa*, 41 Cal. 3d 714, 735 (1986) ("[W]here the investor receives adequate collateral, no risk capital is contributed to the managerial efforts of the promoter and such business transaction does not come within the Corporate Securities Law."). In sum, the usury exemption in section 25118 of the Corporate Securities Law applicable only to securities does not apply to the Loan.

As BJ180 appears to concede in its Complaint, the Loan is not subject to any other usury exemptions. As such, the loan is usurious and subject to the usury remedies available to the Debtor under California law.

### D. Because All Interest Paid on the Loan Is Credited to Principal, BJ180's Claim Must Be Reduced to $0

Application of the usurious interest payments made by the Debtor to the Cohen Trust results in the reduction of the principal owed on the Loan to $0. "When a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is entitled to no interest whatsoever." *Gibbo v.*

[4] In California, two tests are used to determine whether a note is a security: the risk capital test and the federal *Howey* test. *People v. Black*, 8 Cal. App. 5th 889, 900 (2017). Under the risk capital test, a note is a security if it is "an attempt by an issuer to raise funds for a business venture or enterprise; an indiscriminate offering to the public at large where the persons solicited are selected at random; a passive position on the part of the investor; and the conduct of the enterprise by the issuer with other people's money." *Silver Hills Country Club v. Sobieski*, 55 Cal. 2d 811, 814 (1961). Under the federal *Howey* test (based on *SEC v. Howey*, 328 U.S. 293 (1946)), the question is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Black*, 8 Cal. App. 5th at 900 (citations omitted). Applying either of these tests, it is clear that the Loan is not a security.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

*Berger*, 123 Cal. App. 4th 396, 403 (2004) (quoting *Winnett v. Roberts*, 179 Cal.App.3d 909, 921 (1986)). Interest payments made at the usurious rate are credited against principal. *Hardwick v. Wilcox*, 11 Cal. App. 5th 975, 979 (2017).[5] A lender cannot retroactively turn a usurious interest payment into a non-usurious interest payment. This is because "the instant a payment is made of usurious interest it is applied to the principal, and the principal indebtedness at the time of such payment is reduced to the extent thereof." *Id.* at 992 (quoting *Shirley v. Britt*, 152 Cal. App. 2d 666, 669-70 (1957)).

During the approximate 10-year period since the making of the Loan, the Cohen Trust unquestionably received over $1.96 million in usurious interest payments from the Debtor. Docket No. 90, Wright Decl., Ex. 1. The entirety of that amount is applied to principal, which is $1,950,000. *See Korchemny v. Piterman*, 68 Cal. App. 5th 1032, 1043 (2021). Because the Debtor unquestionably paid the Cohen Trust over $1,960,000 in usurious interest on the Loan over the last 10 years, all of which is credited to principal, the offset results in the reduction of the Claim to $0 and subjects it to disallowance under section 502(b)(1) of the Bankruptcy Code. UF 24.

## V. <u>CONCLUSION</u>

The Court has given BJ180 the opportunity to take discovery to support its purported estoppel argument. Discovery has confirmed that there is no basis whatsoever for estoppel. Because the Loan clearly is usurious, and because it is not exempt under any theory, all payments of interest by the Debtor to the Cohen Trust must be credited to principal, which results in the payment in full of the Loan.

/ / /

/ / /

/ / /

/ / /

/ / /

[5] A two-year statute of limitations applies to causes of action to recover usurious interest. However, the cause of action does not accrue until the debtor actually pays excess interest. Since payments on a usurious note are deemed to apply first to principal, the statute of limitations does not begin to run until the debtor has paid the entire principal amount of the debt. *Hardwick*, 11 Cal. App. 5th at 991 (citing Code Civ. Proc. § 339).

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Accordingly, and for all of the foregoing reasons, the Court should enter summary judgment sustaining the Claim Objection, and setting a further hearing to decide the amount of attorneys' fees payable to the Reorganized Debtor pursuant to the terms of the Note and California Civil Code section 1717.

DATED: January 10, 2025

ELKINS KALT WEINTRAUB REUBEN
GARTSIDE LLP

By: [signature]

ROYE ZUR
LAUREN N. GANS
Attorneys for Reorganized Debtor
S&W Blue Jay Way, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10345 W. Olympic Blvd., Los Angeles, CA 90064.

A true and correct copy of the foregoing document entitled (*specify*): **REORGANIZED DEBTOR'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON ITS OBJECTION TO CLAIM NO. 2-1 OF BLUE JAY 180, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 10, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 10, 2025 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 10, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL**

Honorable Ronald A. Clifford III
United States Bankruptcy Court
Central District of California
1415 State Street, Suite 233 / Courtroom 201
Santa Barbara, California 93101-2511

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 10, 2025 | Lauren B. Wageman | */s/ Lauren B. Wageman* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Anthony Bisconti** tbisconti@bklwlaw.com, 7657482420@filings.docketbird.com;docket@bklwlaw.com
- **Brian David Fittipaldi** brian.fittipaldi@usdoj.gov
- **Chris L Frost** chris@frostllp.com, nicole@frostllp.com;allison@frostllp.com;xiomara@frostllp.com;josh@frostllp.com;zach@frostllp.com
- **Daniel A Lev** daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Lee S Raphael** ecfcca@ecf.courtdrive.com, cmartin@pralc.com
- **Ronald N Richards** ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **United States Trustee (ND)** ustpregion16.nd.ecf@usdoj.gov
- **Matthew Cave** mcave@kfc.law, mschneider@kfc.law