Anthony R. Bisconti, State Bar No. 269230
tbisconti@bklwlaw.com
**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile (949) 369-3701

Attorneys for *1966 BJW, LLC; HS Blue Jay Way, LLC; ERW One Thousand, LLC; LVC One Thousand, LLC; and 180 PCH, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION**

| | |
|---|---|
| In re<br><br>S&W BLUE JAY WAY, LLC,<br><br>Debtor and Debtor-in-Possession. | Case No. 9:23-bk-10672-RC<br><br>Adv. Pro. No.:<br><br>Chapter 11<br><br>Hon. Ronald A. Clifford III |
| BLUE JAY 180 LLC, a California limited liability company,<br><br>Plaintiff,<br><br>HUSHMAND SOHAILI, an individual; RICHARD WEINTRAUB, an individual; 1966 BJW, LLC, a Delaware limited liability company; HS BLUE JAY WAY, LLC, a California limited liability company, formerly known as RC/HS, LLC; ERW ONE THOUSAND, LLC, a Delaware limited liability company; LVC ONE THOUSAND, LLC, an entity of unknown state formation, aka LA VILLA CONTENTA LLC, a Delaware limited liability company; 180 PCH, LLC, a California limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1452 AND FED. R. BANKR. P. 9027** |

# TABLE OF CONTENTS

I. SUMMARY OF GROUNDS FOR REMOVAL .......... 1

II. BACKGROUND .......... 4

A. The Chapter 11 Case, the Plan, and the Confirmation Order. .......... 4

B. Retention of Jurisdiction. .......... 6

C. BJ180's Claim and the Conditional Withdrawal Order. .......... 6

D. The Action. .......... 7

E. BJ180 and its affiliates have taken the contrary position in numerous state court actions. .......... 10

III. BASIS FOR REMOVAL .......... 12

A. The Action "arises in" this case because it requires the Court to interpret and enforce the Conditional Withdrawal Order .......... 12

B. BJ180's waiver and release of the Claim against S&W extinguished the only liability the Action seeks to impose, and determining the effect of that release arises in this case. .......... 13

C. The Action arises in this case because it pleads the Court-approved Plan sale as a basis for alter ego liability and collaterally attacks the Confirmation Order. .......... 14

D. The Action is within the Court's retained jurisdiction. .......... 15

E. The Action's generalized alter ego allegations assert claims belonging to the Estate that vested in the Reorganized Debtor under the Plan. .......... 16

F. The Action is "related to" this case under the post-confirmation close nexus test. .......... 17

IV. TIMELINESS .......... 18

V. STATEMENT REGARDING CORE STATUS AND CONSENT .......... 18

VI. COPIES OF ALL PROCESS AND PLEADINGS .......... 18

VII. NOTICE .......... 18

VIII. RELATED FILINGS .......... 18

IX. CONCLUSION .......... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

<u>*Page(s)*</u>

**Cases**

*Ahcom, Ltd. v. Smeding*,
623 F.3d 1248 (9th Cir. 2010) .......... 16

*Albert-Sheridan v. State Bar (In re Albert-Sheridan)*,
658 B.R. 516 (B.A.P. 9th Cir. 2024) .......... 14, 15

*Battle Ground Plaza, LLC v. Ray (In re Ray)*,
624 F.3d 1124 (9th Cir. 2010) .......... 14

*Chagolla v. JP Morgan Chase Bank, N.A. (In re Chagolla)*,
544 B.R. 676 (B.A.P. 9th Cir. 2016) .......... 12

*Fuls v. Shastina Properties, Inc.*,
448 F. Supp. 983 (N.D. Cal. 1978) .......... 3, 14

*Hennessey's Tavern, Inc. v. Am. Air Filter Co.*,
204 Cal. App. 3d 1351 (1988) .......... 13

*In re Wilshire Courtyard*,
729 F.3d 1279 (9th Cir. 2013) .......... 12, 17

*Leek v. Cooper*,
194 Cal. App. 4th 399 (2011) .......... 13

*M/V Am. Queen v. San Diego Marine Const. Corp.*,
708 F.2d 1483 (9th Cir. 1983) .......... 3, 14

*ML Liquidating Tr. v. Mayer Hoffman McCann P.C. (In re Mortgs. Ltd.)*,
452 B.R. 776 (Bankr. D. Ariz. 2011) .......... 16

*Montana v. Goldin (In re Pegasus Gold Corp.)*,
394 F.3d 1189 (9th Cir. 2005) .......... 16, 17

*Prods. & Additives Co. v. Black Gold S.A.R.L.*,
115 F.4th 1202 (9th Cir. 2024) .......... 16

*RS Air, LLC v. NetJets Aviation, Inc. (In re RS Air, LLC)*,
651 B.R. 538 (B.A.P. 9th Cir. 2023) .......... 14

*Shaoxing Cnty. Huayue Imp. & Exp. v. Bhaumik*,
191 Cal. App. 4th 1189 (2011) .......... 13, 16

*Stodd v. Goldberger*,
73 Cal. App. 3d 827 (1977) .......... 16
*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009) .......... 12, 15, 18

*Trulis v. Barton*,
107 F.3d 685 (9th Cir. 1995) .......... 15

**Statutes**

11 U.S.C. § 101(5)(A) .......... 9, 13

11 U.S.C. § 101(5)(B) .......... 3

11 U.S.C. § 101(12) .......... 3, 13

11 U.S.C. § 524(e) .......... 3, 8, 14

11 U.S.C. § 1125(e) .......... 5

11 U.S.C. § 1129 .......... 4

11 U.S.C. § 1141(a) .......... 15

28 U.S.C. § 157(a) .......... 12

28 U.S.C. § 157 .......... 4, 12, 15, 18

28 U.S.C. § 1334 .......... 4, 12, 17, 19

28 U.S.C. § 1452 .......... 1, 12, 18

Cal. Corp. Code § 17703.04(b) .......... 13

**Rules**

Fed. R. Bankr. P. 9027 .......... 1, 18

**TO THE CLERK OF THE ABOVE-CAPTIONED COURT, THE HONORABLE RONALD A. CLIFFORD III, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Defendants 1966 BJW, LLC and HS Blue Jay Way, LLC, the co-managing members of the reorganized debtor S&W Blue Jay Way, LLC ("S&W" or the "Reorganized Debtor"), together with defendants ERW One Thousand, LLC, LVC One Thousand, LLC, and 180 PCH, LLC (collectively, the "Removing Defendants"), file this Notice of Removal under 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027. The removed action is *Blue Jay 180 LLC v. Hushmand Sohaili, et al.*, Case No. 26SMCV02555, filed on May 7, 2026, but not (purportedly) served until September 14, 2026, in the Superior Court of the State of California for the County of Los Angeles – West District (the "Action"). The original complaint (the "Original Complaint" or "Orig. Compl.") was superseded by the First Amended Complaint filed September 17, 2026 (the "FAC"), which is the operative pleading.

## I. SUMMARY OF GROUNDS FOR REMOVAL

1. The Action asserts one cause of action against the Removing Defendants. It alleges that the Removing Defendants, along with Hushmand Sohaili and Richard Weintraub, are alter egos of the Reorganized Debtor and are liable for its obligations under the promissory note (the "Note") that was the basis of Proof of Claim No. 2-1 (the "Claim") filed by Blue Jay 180, LLC ("BJ180") in the underlying bankruptcy case (the "Bankruptcy Case"). (FAC ¶¶ 14-19, 46, 62-64.) The complaint in the Action also includes numerous allegations concerning the Bankruptcy Case, litigation over the Claim, the Plan, and confirmation of the Plan, as part of its basis for alleged alter ego liability.

2. On November 10, 2023, S&W filed an objection to BJ180's Claim in the Bankruptcy Case. ECF 90. On January 10, 2025, S&W filed a motion for summary judgment on its objection to BJ180's Claim. ECF 236. The sole issue in S&W's claim objection was whether the Note was usurious.

3. On May 13, 2025, with S&W's summary judgment motion pending and trial on the claim objection (if necessary) scheduled to commence July 31, 2025, BJ180 filed a motion seeking to "conditionally withdraw" its Claim. ECF 301. S&W opposed that motion. ECF 322 (the "Opposition" or

"Opp."). The Opposition identified a litany of improper conduct by BJ180, the co-trustees of the Cohen Family Trust (the "Cohen Trustees"), and counsel, including but not limited to:

- Unsupported factual assertions to obtain discovery and delay (Opp. at 7, 11-13);
- Multiple false statements to this Court (Opp. at 15-16; *see also* ECF 183, 217, 330);
- Discovery misconduct, including non-compliance with subpoenas necessitating multiple orders of this Court compelling compliance (Opp. at 7, 15-17, 22, 27-28, 35-38);
- False medical excuses for discovery non-compliance, confirmed by a private investigator (Opp. at 18-19, 21, 26-27 & n.5);
- Deposition obstruction (Opp. at 19-21, 27);
- Witness intimidation (Opp. at 23-26); and
- Delay and pretextual withdrawal on the eve of trial to avoid the pending depositions and an adverse ruling and with the goal of being able to relitigate in state court (Opp. at 8-9, 28-29, 37-40).

4. On July 28, 2025, after several hearings, the Court entered its *Order Conditionally Granting Blue Jay 180, LLC's Motion to Conditionally Withdraw Claim No. 2-1* (the "Conditional Withdrawal Order" or "CWO"). ECF 372. In that order, the Court permitted BJ180 to withdraw its Claim, on the express condition "that [BJ180] is to **waive its Claim** against [S&W], **thereby releasing any future request to recover said claim** from [S&W]." CWO at 12 (emphasis added). The Conditional Withdrawal Order further observed that BJ180 "has asserted that it is agreeable to a granting of the Motion with the condition that it will be **forever barred from asserting the Claim** against [S&W] in the future." *Id.* at 8 (emphasis added).

5. The Court's Conditional Withdrawal Order therefore expressly provided that BJ180 "waived" and "released" its claim based on the Note in exchange for being permitted to withdraw its claim. Section 101(5) of the Bankruptcy Code expressly defines "claim" as "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(A)-(B). Relatedly, the Bankruptcy Code defines "debt" as "liability on a

claim." 11 U.S.C. § 101(12). Accordingly, by expressly agreeing to waive and release its Claim, BJ180 knowingly and voluntarily waived and released its right to payment or any equitable remedy based on the Note or alleged breach thereof and all liability of S&W on the Note. That waiver and release was a full and complete release, under which the underlying obligation on the Note, and any liability on the Note, was extinguished. Because alter ego liability is wholly derivative of the primary obligor's obligation, the waiver and release of S&W's liability on the Note released any alleged alter ego from liability for breach of that same Note. *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1490 (9th Cir. 1983); *Fuls v. Shastina Properties, Inc.*, 448 F. Supp. 983, 989 (N.D. Cal. 1978).

6. Despite this, BJ180 alleges in the Action that the "without prejudice" language in the Conditional Withdrawal Order, and 11 U.S.C. § 524(e) (which concerns non-consensual discharges of debt, which is inapplicable here, as opposed to a knowing and voluntary waiver and release of liability), permit BJ180 to continue to pursue liability under the Note. FAC ¶ 50. Even though it fully waived and released its right to payment under the Note or an equitable remedy for alleged breach of the Note, BJ180 asserts in the Action that the Removing Defendants and the individual defendants should be liable for S&W's alleged breach of the Note—even though BJ180 waived and released that liability—and seeks damages, including "attorneys' fees incurred by Plaintiff enforcing the Note . . . including but not limited to in the [Bankruptcy Case]." FAC ¶¶ 66-67. BJ180 emphasizes that the Conditional Withdrawal Order permitted it to withdraw its claim "without prejudice" (FAC ¶¶ 49, 52), even though it is clear that the "without prejudice" language was included solely to make clear that the Court was not deciding the sole issue before it, whether the Note was usurious, "on the merits," which would have been the presumption if withdrawal of the Claim was "with prejudice" (and would have entitled S&W to recover attorneys' fees and costs as the "prevailing party"). (CWO at 6, 8-10; June 25, 2025 Hr'g Tr. 60:5-25). Even though the Court recognized that, as a result of the condition the Court imposed (and which BJ180 accepted) that BJ180 be permitted to withdraw its claim only if it waived and released its claim against S&W fully and forever, the withdrawal was "[i]n effect . . . with prejudice," BJ180 now seeks to recover fees and costs as a "prevailing party" in the litigation before this Court.

7. Independent of the removal of this Action, the Reorganized Debtor will be filing in the main case a motion to interpret, enforce, and/or clarify the Conditional Withdrawal Order as to the Reorganized Debtor's liability and obligations related to the Note.

8. This Court has jurisdiction under 28 U.S.C. § 1334(b) on four independent grounds. First, the Action arises in this case because it requires this Court to interpret and enforce the Conditional Withdrawal Order, under which BJ180 fully waived and released, and thereby extinguished, the only obligation the Action seeks to impose—S&W's alleged liability on the Note. Second, the Action arises in this case because it pleads the sale of the Property approved by the Order Confirming Debtor's First Modified First Amended Chapter 11 Liquidating Plan [ECF 188] (the "Confirmation Order") as a basis for alter ego liability, and therefore collaterally attacks that order. Third, the Action's generalized alter ego allegations assert claims belonging to the Estate that vested in the Reorganized Debtor under the confirmed Plan. Fourth, the Action is related to this case under the post-confirmation close nexus test, because it affects the interpretation, implementation, and consummation of the confirmed Plan.

## II. BACKGROUND

### A. The Chapter 11 Case, the Plan, and the Confirmation Order.

9. On August 4, 2023, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code. (CWO at 1.)

10. On May 24, 2024, the Court entered the Confirmation Order, confirming the *First Modified First Amended Chapter 11 Liquidating Plan* [ECF 180] (the "Plan") under 11 U.S.C. § 1129(a) and (b). (Conf. Order ¶ 22.) The Court found that confirmation was "a core proceeding over which the Court has jurisdiction under 28 U.S.C. §§ 157(b) and 1334(a)." (Conf. Order ¶ 1.) The Plan is incorporated into the Confirmation Order. (Conf. Order ¶ 24.)

11. The Plan provides that the Debtor "will not receive any discharge in the Chapter 11 Case." Plan, Art. IX.B.

12. The Plan and Confirmation Order bind "any and all creditors of the Debtor or the Estate, whether or not their claims are impaired under the Plan and whether or not such creditors have accepted the Plan." (Conf. Order ¶ 31; *see* Plan, Art. IX.A.)

13. The Confirmation Order provides that "[t]he treatment of Claims provided in the Plan shall be in full and final satisfaction, settlement and release of all Claims of any nature whatsoever against the Estate, the Debtor, the Reorganized Debtor, or their respective property." (Conf. Order ¶ 37.) The Plan defines "Claim" as "any claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code." Plan, Art. I.

14. The Confirmation Order approved the sale of the Debtor's real property at 1627-1633 Blue Jay Way (the "Property") to HRBJW2, LLC. Conf. Order ¶¶ 21, 27. It provides that the transfers contemplated under the Plan "do not and shall not subject the Debtor, the Estate, any of their current or future officers, directors, employees, owners, partners, beneficiaries, members, professionals, agents or representatives . . . to any liability by reason of such transfer under any applicable law, including any laws relating to fiduciary duty or successor or transferee liability." (Conf. Order ¶ 28(c).)

15. The sale to HRBJW2 was disclosed and contested. The Debtor reported that HRBJW2 was "an entity affiliated with the Debtor's insiders." ECF 143 at 2. BJ180 objected to confirmation, challenged the insider sale, and sought discovery into HRBJW2's members, capitalization, and source of funds. ECF 155 at 4; ECF 160 at 52. The Court approved the stipulation among the Debtor, the Senior Lienholders, and HRBJW2 "in its entirety as fair, equitable, and in the best interest of the Estate" (Conf. Order ¶ 21); found that the Debtor proposed the Plan "in good faith and not by any means forbidden by law" (Conf. Order ¶ 6); found that the Debtor "and its principals" solicited votes in good faith and are entitled to the protections of 11 U.S.C. § 1125(e) and the Plan's exculpation and release provisions (Conf. Order ¶ 19); adopted the Debtor's confirmation briefing as findings of fact and conclusions of law (Conf. Order ¶ 3); and overruled "[a]ny and all objections" to confirmation (Conf. Order ¶ 23).

16. The Plan vests in the Reorganized Debtor "all Assets of the Estate . . . including, but not limited to all Causes of Action of the Debtor against third parties" (Plan, Art. IX.C), and grants the Reorganized Debtor "the sole, absolute and exclusive right to investigate and prosecute any recovery rights of the Estate including all claims, torts, demands, actions or Causes of Action of any kind or nature whatsoever," including "all fraudulent transfer claims" and "all claims against any third party on account of an indebtedness or any other claim owed to or in favor of the Debtor or the Estate." ECF 180 at 16:22-

17:7. The Confirmation Order provides that "all assets whatsoever of the Estate or the Debtor are vested in the Reorganized Debtor free and clear of all claims, liens, and interests." (Conf. Order ¶ 35.)

**B. Retention of Jurisdiction.**

17. Article X of the Plan provides:

> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Reorganized Debtor, and the Plan as legally permissible[.]

18. The retained jurisdiction includes jurisdiction to:

> (a) "[a]llow, disallow, determine, liquidate . . . any Claim" (Plan, Art. X, ¶ 1);
> (b) "[r]esolve any issues related to any matters adjudicated in the Chapter 11 Case" (Plan, Art. X, ¶ 4);
> (c) "[d]ecide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future" (Plan, Art. X, ¶ 6);
> (d) "[r]esolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan" (Plan, Art. X, ¶ 8);
> (e) "[i]ssue injunctions and enforce them . . . to restrain interference by any entity with consummation or enforcement of the Plan" (Plan, Art. X, ¶ 9);
> (f) "[e]nforce the terms of the Plan" (Plan, Art. X, ¶ 10); and
> (g) "[r]esolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan" (Plan, Art. X, ¶ 12).

19. The Confirmation Order provides that "[t]he Court shall retain jurisdiction over the Chapter 11 Case to the fullest extent described in the Plan." Conf. Order ¶ 36.

**C. BJ180's Claim and the Conditional Withdrawal Order.**

20. On October 13, 2023, BJ180 filed its Claim in the amount of $2,759,755.10, based on the Note made by S&W in favor of the Cohen Family Trust. CWO at 2. On November 10, 2023, the Debtor objected to the Claim on usury grounds. ECF 90; CWO at 2. The Claim and the objection were litigated for more than a year and a half, including discovery motions, a motion for summary judgment, a motion in limine, and a pre-trial stipulation. *See* CWO at 2.

21. On May 13, 2025, approximately two months before the scheduled evidentiary hearing, BJ180 moved under Rule 3006 to withdraw the Claim. ECF 301; CWO at 3, 12.

22. In its Reply, BJ180 represented that it "will not seek collection from the estate at any point in the future" and that "the Debtor is insulated from any future collection attempts as it relates to Blue Jay's claim." CWO at 3-4 (quoting ECF 325 at 10).

23. The Court found that BJ180 "has asserted that it is agreeable to a granting of the Motion with the condition that it will be forever barred from asserting the Claim against the Debtor in the future." CWO at 8. The Court further found: "That is, ***[BJ180] is agreeing that the Claim is essentially being withdrawn with prejudice*** insofar as it is not to be refiled." CWO at 8-9 (emphasis added).

24. The Court heard the motion at a continued hearing on June 25, 2025. The Court stated that BJ180 had "already waived any claim as of the petition date. That's done." *See* June 25, 2025 Hr'g Tr. at 62:16-18. The Court further stated: "That they agreed they're walking away -- if the motion is granted, they're walking away from any claim, and that by definition, would be a claim that arose as of the petition date. So I think we're all -- ***I think we're all in agreement there***." *Id.* at 63:15-20 (emphasis added). When the Debtor argued that a withdrawal on those terms was by definition with prejudice, the Court responded: "***In effect, it's with prejudice***." *Id.* at 60:22-25 (emphasis added).

25. On July 28, 2025, the Court entered the Conditional Withdrawal Order, which provides: "The Court conditions approval of the Motion on the term that Blue Jay is to **waive its Claim** against the Debtor, **thereby releasing any future request to recover said claim** from the Debtor" and noting that BJ180 "has offered as much." CWO at 12. The Court also found that "[t]he Claim . . . is resolved in full in terms of payment with the granting of the Motion." CWO at 11. BJ180 did not withdraw its motion in response to that condition. *See* CWO at 9-10. BJ180's waiver and release was a full and complete release of the Claim, under which the underlying obligation and any liability of S&W on the Note was extinguished.

**D. The Action.**

26. On May 7, 2026, BJ180 filed the Action against the Removing Defendants and the individual defendants. The FAC asserts a single cause of action "for Breach of Promissory Note by Alter Egos of Borrower," alleging that the defendants "are the alter egos of S&W LLC for the reasons alleged herein and, therefore, are liable and responsible for its obligations under the Note, as amended, and the

Cohen Loan." FAC ¶ 62. It seeks the principal sum of $1,950,000, plus interest, fees, and costs. FAC ¶¶ 46, 63-67; FAC Prayer ¶¶ 1-3.

27. The FAC pleads this case, the Conditional Withdrawal Order, and the Plan as part of its claim. FAC ¶¶ 47-55. It alleges that "[t]he Conditional Withdrawal Order only ordered the bankruptcy claim and debt released as to the bankrupt Debtor S&W LLC and its estate" (FAC ¶ 50), that "because the withdrawal of BJ 180's bankruptcy claim was without prejudice, there is no preclusive effect" (FAC ¶ 52), and, invoking 11 U.S.C. § 524(e), that the Conditional Withdrawal Order "did not release non-debtor third parties" (FAC ¶ 51).

28. The FAC's theory of liability is built on the proceedings in this case. It alleges that "S&W LLC filed a Chapter 11 bankruptcy petition in the matter entitled *In re S&W Blue Jay Way, LLC*, United States Bankruptcy Court, Central District of California ('Bankruptcy Court'), Case No. 9:23-bk-10672-RC ('S&W BK Action')" (FAC ¶ 47); that "BJ 180 filed a Motion to Conditionally Withdraw Claim No. 2-1 in the S&W BK Action pursuant to which BJ 180 sought to withdraw its bankruptcy Claim No. 2-1 against S&W LLC's bankruptcy estate without prejudice" (FAC ¶ 48); that "[p]ursuant to the Withdrawal Order, BJ 180's Claim No. 2-1 in the S&W BK Action as against that debtor's estate was withdrawn without prejudice" (FAC ¶ 49); and that "[t]he Conditional Withdrawal Order further provides, 'The Court conditions approval of the Motion on the term that Blue Jay is to waive its Claim against the Debtor, thereby releasing any future request to recover said claim from the Debtor'" (FAC ¶ 50). The FAC quotes the Bankruptcy Code, alleging that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt," and that "the Conditional Withdrawal Order did not release non-debtor third parties." FAC ¶ 51 (quoting 11 U.S.C. § 524(e)). It further pleads that "the Bankruptcy Court entered its Order Confirming S&W LLC's First Modified First Amended Chapter 11 Liquidating Plan" (FAC ¶ 53), that the Plan sale transaction "has been fully consummated" (FAC ¶ 54), and that "[t]he Plan became effective on June 13, 2024" (FAC ¶ 55). And it seeks "attorneys' fees incurred by Plaintiff enforcing the Note, as amended, . . . including but not limited to in the S&W BK Action." FAC ¶ 66.

29. The Original Complaint in the Action alleged that HRBJW2, LLC — the purchaser of the Property under the Plan — "also was owned by Sohaili and Weintraub via their wholly owned limited

liability companies," and that "[t]his was done to further avoid liability on the Note that was unpaid." Orig. Compl. ¶ 54. The FAC continues to plead the Plan sale to HRBJW2 and its consummation as part of the facts incorporated into the alter ego cause of action. *See* FAC ¶¶ 53-55, 61.

30. The FAC also revises the Original Complaint's description of the Claim and its release in ways that recast what BJ180 gave up as part of the Conditional Withdrawal Order. The Original Complaint alleged that BJ180 moved "to withdraw its bankruptcy claim against S&W LLC without prejudice," that "BJ 180's claim in the S&W BK Action as against that debtor's estate was withdrawn without prejudice," and that the Conditional Withdrawal Order "only ordered the claim and debt released as to the bankrupt Debtor S&W LLC and its estate." Orig. Compl. ¶¶ 46-48. The FAC now alleges that BJ180 sought to withdraw "its bankruptcy Claim No. 2-1 against S&W LLC's bankruptcy estate" (FAC ¶ 48), that "BJ 180's Claim No. 2-1 in the S&W BK Action" was withdrawn (FAC ¶ 49), and that the order "only ordered the *bankruptcy* claim and debt released as to the bankrupt Debtor S&W LLC and its estate" (FAC ¶ 50 (emphasis added)). By relabeling what was released as a "bankruptcy claim" and a numbered proof of claim against the "bankruptcy estate," the FAC recharacterizes the released claim as a mere entitlement to a distribution from the Estate rather than BJ180's "right to payment" on the Note, and S&W's obligations and liability under the Note—the "Claim" the Court required BJ180 to waive and release, and which BJ180 knowingly and voluntarily agreed to waive and release. 11 U.S.C. § 101(5)(A); CWO at 12.

31. The FAC likewise revises BJ180's stated reason for withdrawing the Claim. The Original Complaint alleged that BJ180 moved to withdraw "because of other relief available to it in other forums." Orig. Compl. ¶ 46. The FAC adds that BJ180 did so "because S&W's debtor bankruptcy estate had insufficient assets to satisfy BJ 180's bankruptcy claim and other possible relief available to BJ 180 in other potential forums." (FAC ¶ 48.) The amendment reframes the withdrawal as a response to the Estate's limited assets—that is, as a decision about collecting from the Estate—rather than as the waiver of the underlying right to payment and release of S&W from any liability under the Note that the Court imposed as a condition of relief. CWO at 8-9, 12.

32. Finally, the FAC deletes the Original Complaint's allegation that the Plan purchaser was owned by Messrs. Sohaili and Weintraub and that the Plan sale "was done to further avoid liability on the Note that was unpaid." *Compare* Orig. Compl. ¶ 54, *with* FAC ¶¶ 53-56. Nonetheless, the FAC retains the

Plan, the sale, and its consummation as facts incorporated into the alter ego cause of action. *See* FAC ¶¶ 53-55, 61. Taken together, these amendments appear designed to minimize the bankruptcy proceedings as a basis for liability without abandoning BJ180's reliance on them.

33. The FAC's alter ego allegations are, for the most part, directed to harm to S&W and its creditors generally rather than to any representation to or injury suffered by BJ180 in particular. It alleges that S&W was "undercapitalized"; that funds were "commingled" and not segregated; that there were "unauthorized diversion[s] of corporate/business funds and assets to other than corporate/business uses"; that S&W's principals "treated the assets of S&W LLC . . . as [their] own"; that there is "an absence of corporate assets"; and that "there have been diversions of assets from S&W LLC . . . to the detriment of creditors." FAC ¶¶ 16(a)-(e), (l), (o); 17(a)-(e), (l), (p); 19(a)-(d). Notably, while BJ180 makes these allegations, it expressly acknowledges it has no evidence to support them. *See, e.g.*, FAC ¶¶ 15-17, 19.

**E. BJ180 and its affiliates have taken the contrary position in numerous state court actions.**

34. Notwithstanding BJ180's full and complete waiver and release of S&W's liability on the Note, and the resulting extinguishment of any obligation of S&W under the Note, BJ180 and its affiliates—including the Cohen Family Trust (the "Cohen Trust"), which "is affiliated with BJ 180 and has paid all attorneys' fees incurred by BJ 180" (Malpractice FAC ¶ 41)—have taken the contrary position in no fewer than three pending state court actions, contending that BJ180 relinquished only its right to a distribution from the Estate and suggesting it did not give a full and complete voluntary waiver and release of its Claim, and that S&W's liability and obligations under the Note were not extinguished. This is contrary to the Conditional Withdrawal Order.

35. BJ180 advanced the same position before this Court, and the Court rejected it. At the June 25, 2025 hearing, Mr. Richards stated that BJ180 was withdrawing the Claim "without prejudice if the Court sticks to its tentative not to get or receive another dividend ever from this estate again," but that "what we are not doing is discharging or releasing or satisfying the debt." *See* June 25, 2025 Hr'g Tr. at 3. This shows BJ180's awareness that waiving and releasing S&W's liability may impact the liability of non-debtor parties.

36. The Court did not adopt BJ180's formulation. It instead conditioned relief on BJ180's waiver and release of the Claim, i.e., all asserted obligations and liability of S&W under the Note. CWO at 12. BJ180 agreed to this condition, though it is now attempting to dispute the implications of that waiver and release of liability. BJ180's positions in the three state court actions therefore seek to relitigate, in other fora, the scope of an order this Court entered on BJ180's own motion.

37. BJ180's conduct since entry of the Conditional Withdrawal Order is also inconsistent with the terms on which the Court granted relief. In determining the conditions of withdrawal, the Court observed that such conditions "should be centered around minimizing prejudice to the defendant." CWO at 11. The Court declined to award the Reorganized Debtor fees and costs as a condition of withdrawal, in part because the work performed in the claim litigation "will not go to waste," finding that Mr. Sohaili, a party to the Malpractice Action, "and perhaps others, will use what was learned in the Objection in other matters pending in other courts." CWO at 12. Mr. Richards—who was BJ180's manager and served as its counsel before this Court, and who is also counsel for the plaintiffs in the Malpractice Action—has nonetheless refused to agree that discovery taken in the Bankruptcy Case may be used in the Malpractice Action. That refusal deprives the defendants of the very protection on which the Court relied in minimizing the prejudice caused by allowing BJ180 to withdraw its claim, and further demonstrates that BJ180 and its affiliates are seeking to obtain in state court what they could not obtain from this Court.

38. Further, by stating in the Action that BJ180 is seeking to recover attorneys' fees and costs incurred in litigating its Claim in the Bankruptcy Case before this Court, BJ180 attempts to turn a central rationale of the Court's Conditional Withdrawal Order on its head. The Court permitted BJ180 to withdraw with the label "without prejudice" explicitly to prevent the withdrawal from conferring "prevailing party" status on S&W on the usury issue, so that attorneys' fees and costs incurred in litigating the Claim would not be recoverable. Having received that relief from the Court, BJ180 now seeks to recover its own attorneys' fees and costs for the same litigation for which the Court declined to permit S&W to recover fees and costs, even though the Court recognized that the withdrawal of the Claim was "[i]n effect, . . . with prejudice." *See* June 25, 2025 Hr'g Tr. at 60:25.

## III. BASIS FOR REMOVAL

39. Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

40. Under 28 U.S.C. § 1334(b), the district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Under 28 U.S.C. § 157(a) and the General Order of the United States District Court for the Central District of California, such proceedings are referred to the bankruptcy judges of this District.

### A. The Action "arises in" this case because it requires the Court to interpret and enforce the Conditional Withdrawal Order.

41. A bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). "It is well established that a bankruptcy court retains continuing jurisdiction to interpret and enforce its own orders." *Chagolla v. JP Morgan Chase Bank, N.A. (In re Chagolla)*, 544 B.R. 676, 683 (B.A.P. 9th Cir. 2016) (citing *Travelers*, 557 U.S. at 151, and *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013)). Once such an order becomes final, it is res judicata to "the parties and those in privity with them." *Travelers*, 557 U.S. at 151-52.

42. The only liability the Action seeks to impose on the Removing Defendants is the Reorganized Debtor's alleged liability under the Note. FAC ¶¶ 62-64. But this Court's Conditional Withdrawal Order expressly provided that BJ180 waived and released that liability. The Court further found that the Claim was "essentially being withdrawn ***with prejudice*** insofar as it is not to be refiled." CWO at 8-9 (emphasis added).

43. The FAC therefore presents a dispute over the meaning and effect of an order this Court entered on BJ180's own motion. BJ180 was the movant, accepted the condition the Court imposed, and obtained the relief it requested. CWO at 8, 12. Determining the scope of that order is a matter that would not exist outside this case and falls within the Court's core authority. 28 U.S.C. § 157(b)(2)(A), (B), (O); *Travelers*, 557 U.S. at 151.

**B. BJ180's waiver and release of the Claim against S&W extinguished the only liability the Action seeks to impose, and determining the effect of that release arises in this case.**

44. The record of the proceedings on BJ180's motion establishes that the Court understood, and ordered, that BJ180 was relinquishing the Claim itself, not merely its right to a distribution. At the June 25, 2025 hearing, the Court stated that BJ180 had "already waived any claim as of the petition date. That's done." June 25, 2025 Hr'g Tr. 62:16-18. The Court stated that "if the motion is granted, they're walking away from any claim, and that by definition, would be a claim that arose as of the petition date." *Id.* at 63:16-19. And the Court characterized the result as, "[i]n effect, . . . with prejudice." *Id.* at 60:25. The Conditional Withdrawal Order then made the waiver and release of S&W's liability an express condition of the relief BJ180 requested: BJ180 "is to waive its Claim against the Debtor, thereby releasing any future request to recover said claim from the Debtor." CWO at 12. The Court found that the Claim "is ***resolved in full in terms of payment*** with the granting of the Motion" (CWO at 11), and that BJ180 "is agreeing that ***the Claim is essentially being withdrawn with prejudice*** insofar as it is not to be refiled" (CWO at 8-9) (emphasis added). BJ180 accepted that condition rather than withdraw its motion. *See* CWO at 9-10. The result was a full and complete release of the Claim, under which the underlying obligation on the Note, and S&W's liability thereon, was extinguished.

45. The "Claim" BJ180 waived is, by definition, its "right to payment" on the Note. 11 U.S.C. § 101(5)(A); Plan, Art. I. Further, "debt" means "liability on a claim." 11 U.S.C. § 101(12). Under California law, alter ego liability does not create a separate obligation that survives the release of the primary obligor's obligation or liability. "An alter ego defendant has no separate primary liability to the plaintiff. Rather, plaintiff's claim against the alter ego defendant is identical with that claimed by plaintiff against the already-named defendant." *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358-59 (1988), *quoted in Shaoxing Cnty. Huayue Imp. & Exp. v. Bhaumik*, 191 Cal. App. 4th 1189 (2011). An alter ego theory "is not itself a claim for substantive relief" but "a procedural device by which courts will disregard the corporate entity in order to hold the alter ego individual liable on the obligations of the corporation." *Leek v. Cooper*, 194 Cal. App. 4th 399, 419 (2011). Members of a limited liability company are exposed only to liability "for any debt, obligation, or liability of the limited liability company." Cal. Corp. Code § 17703.04(b). BJ180 alleges no obligation or liability of the Removing

Defendants independent of S&W's obligations and liability on the Note. FAC ¶¶ 62-64. Once BJ180 fully and completely waived and released its right to recover on the Note from S&W, the liability was extinguished, and there remained no "obligation[] of the corporation" to impose on any alleged alter ego. The Ninth Circuit has confirmed that "[w]here the alter ego doctrine applies, therefore, the two corporations are treated as one for purposes of determining liability. It follows that where the one corporation is released from liability, so too is the other." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1490 (9th Cir. 1983) (quoting *Fuls v. Shastina Properties, Inc.*, 448 F. Supp. 983, 989 (N.D. Cal. 1978)) (holding that where creditor released the primary obligor from liability, the obligor's alleged alter ego was also released from liability).

46. BJ180's reliance on 11 U.S.C. § 524(e) and *RS Air, LLC v. NetJets Aviation, Inc. (In re RS Air, LLC)*, 651 B.R. 538 (B.A.P. 9th Cir. 2023) (FAC ¶ 51), confirms that the Action turns on bankruptcy law and this Court's orders, but is misplaced. Those authorities address the effect of a *discharge*. S&W received no discharge. *See* Plan, Art. IX.B. BJ180's right to payment was not discharged by operation of law; BJ180 voluntarily waived and released it, as a court-ordered condition of relief it sought. Whether that waiver reached the Note debt, and whether it bars recovery from parties alleged to be liable only derivatively for that debt, can be determined only by construing the Conditional Withdrawal Order and the record on which it was entered. That inquiry "would have no existence outside of a bankruptcy case." *Albert-Sheridan v. State Bar (In re Albert-Sheridan)*, 658 B.R. 516 (B.A.P. 9th Cir. 2024) (citing *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010)).

**C. The Action arises in this case because it pleads the Court-approved Plan sale as a basis for alter ego liability and collaterally attacks the Confirmation Order.**

47. BJ180 pleaded the Plan sale itself as a ground for alter ego liability, alleging that HRBJW2 was owned by Messrs. Sohaili and Weintraub and that the sale "was done to further avoid liability on the Note that was unpaid." Orig. Compl. ¶ 54. The FAC incorporates the Plan sale and its consummation into the alter ego cause of action (FAC ¶¶ 53-55, 61) and alleges "diversions of assets from S&W LLC . . . to the detriment of creditors" and "an absence of corporate assets" (FAC ¶¶ 16(l), (o); 17(l), (p)). S&W's principal asset was the Property, and the Property left the Estate only through the sale this Court approved. (Conf. Order ¶¶ 21, 27; FAC ¶ 53.)

48. The insider character of the purchaser was disclosed to the Court (ECF 143 at 2), was the subject of BJ180's objection and discovery (ECF 155 at 4; ECF 160 at 52), and was resolved by the Confirmation Order, which approved the sale stipulation as "fair, equitable, and in the best interest of the Estate" (Conf. Order ¶ 21), found that the Plan was proposed in good faith (Conf. Order ¶ 6), found that the Debtor and its principals acted in good faith and are entitled to the Plan's exculpation and release provisions (Conf. Order ¶ 19), overruled all objections (Conf. Order ¶ 23), and ordered that the Plan transfers "do not and shall not subject the Debtor, the Estate, any of their current or future . . . owners, partners, beneficiaries, members . . . to any liability by reason of such transfer under any applicable law" (Conf. Order ¶ 28(c)). "Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect." *Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1995) (citing 11 U.S.C. § 1141(a)). As to a confirmation order, "only a direct attack is available and collateral attack is unavailable." *Id.* (quoting 5 Collier on Bankruptcy ¶ 1141.01[1] (15th ed. 1995)). BJ180 did not appeal the Confirmation Order.

49. A claim that a transaction this Court approved over BJ180's objection, as fair, equitable, in the best interest of the Estate, and protected from owner and member liability, was instead a device to evade the Note asks another court to revisit the Confirmation Order. A court whose orders are challenged, directly or indirectly, as the basis for liability "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers*, 557 U.S. at 151. Such a challenge would have no existence outside this case, and it concerns the confirmation of the Plan and an order approving the sale of property of the Estate. 28 U.S.C. § 157(b)(2)(L), (N); *In re Albert-Sheridan*, 658 B.R. 516. The Action is therefore inextricably linked to, and arises in, the Bankruptcy Case.

**D. The Action is within the Court's retained jurisdiction.**

50. The Court retained jurisdiction over "all entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Reorganized Debtor, and the Plan." (Plan, Art. X; Conf. Order ¶ 36.) The Action falls within at least Plan Article X, paragraph 1 (it requires a determination of whether any liability remains on the Claim); paragraph 4 (it concerns an issue "related to [a] matter[] adjudicated in the Chapter 11 Case"); paragraphs 8 and 10 (it concerns the "interpretation or enforcement of the Plan," including

Confirmation Order ¶¶ 28(c), 31, and 37); and paragraph 12 (it concerns a "release . . . adopted in connection with the Plan").

51. BJ180 is bound by the Plan and the Confirmation Order. (Conf. Order ¶ 31; Plan, Art. IX.A.)

**E. The Action's generalized alter ego allegations assert claims belonging to the Estate that vested in the Reorganized Debtor under the Plan.**

52. Under California law, the trustee of a bankrupt entity may maintain an action on an alter ego theory where there is "some allegation of injury to the corporation that gives the corporation a right of action against the defendant," including "an action to set aside fraudulent transfers or an action for conversion to recover assets of the bankrupt corporation." *Shaoxing*, 191 Cal. App. 4th 1189 (citing *Stodd v. Goldberger*, 73 Cal. App. 3d 827, 833-34 (1977)). When the estate has standing to assert such a claim, that standing "is 'exclusive and divests all creditors of the power to bring the claim.'" *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010) (citation omitted); *see Int'l Petro. Prods. & Additives Co. v. Black Gold S.A.R.L.*, 115 F.4th 1202 (9th Cir. 2024) (discussing *Ahcom*).

53. The FAC's core alter ego allegations—undercapitalization, commingling, "unauthorized diversion of corporate/business funds and assets," treatment of S&W's assets as the principals' own, the "absence of corporate assets," and "diversions of assets from S&W LLC . . . to the detriment of creditors" (FAC ¶¶ 16(a)-(e), (l), (o); 17(a)-(e), (l), (p); 19(a)-(d))—describe injury to S&W and to its creditors as a body, not injury unique to BJ180. To the extent BJ180 seeks to recover on account of assets allegedly diverted from S&W, it asserts a right of action belonging to S&W and its Estate. Under the Plan, all such Causes of Action vested in the Reorganized Debtor, which holds "the sole, absolute and exclusive right to investigate and prosecute" them. (Plan, Art. IX.C; ECF 180 at 16:22-17:7; Conf. Order ¶ 35.) The Plan's treatment of Claims is "in full and final satisfaction, settlement and release of all Claims," and the Plan binds BJ180. (Conf. Order ¶¶ 31, 37.)

54. Adjudicating whether BJ180 may prosecute those allegations therefore requires this Court to interpret and enforce the Plan's vesting and exclusivity provisions and the Confirmation Order. Litigation of debtor causes of action that a plan preserves for the benefit of creditors is "part and parcel of the 'consummation, execution, [and] administration of the confirmed plan.'" *ML Liquidating Tr. v. Mayer Hoffman McCann P.C. (In re Mortgs. Ltd.)*, 452 B.R. 776 (Bankr. D. Ariz. 2011) (applying *Montana v.*

*Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005)). The Court expressly retained jurisdiction over "any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future." Plan, Art. X, ¶ 6. And the district court in which this case is pending has exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1).

**F. The Action is "related to" this case under the post-confirmation close nexus test.**

55. After confirmation, "related to" jurisdiction exists over matters having "a close nexus to the bankruptcy plan or proceeding," including matters "affecting the 'interpretation, implementation, consummation, execution, or administration of the confirmed plan.'" *In re Pegasus Gold*, 394 F.3d at 1194; *In re Wilshire Courtyard*, 729 F.3d at 1287. The test "requires particularized consideration of the facts and posture of each case." *In re Wilshire Courtyard*, 729 F.3d at 1289. In *Wilshire Courtyard*, the Ninth Circuit rejected the argument that jurisdiction was lacking "because the bankruptcy case had been long since closed by the time the . . . dispute began." *Id.* In *Pegasus Gold*, jurisdiction existed where resolution of the claims "likely would have required interpretation of the settlement agreement and the bankruptcy plan." 394 F.3d at 1194.

56. The close nexus is present here for at least four reasons:

(a) The Action requires adjudication of whether the Reorganized Debtor remains liable on the Claim. BJ180 seeks to hold the defendants liable for S&W's "obligations under the Note." FAC ¶ 62. Its claim rests on the premise that the Debtor's obligation and liability survived the Conditional Withdrawal Order and the Confirmation Order. FAC ¶¶ 50-52. That premise concerns the effect of the Confirmation Order and the Conditional Withdrawal Order on Claims against the Reorganized Debtor.

(b) The Action challenges a transaction consummated under the Plan. BJ180 pleaded that the Plan sale of the Property to HRBJW2 "was done to further avoid liability on the Note" (Orig. Compl. ¶ 54), and the FAC continues to rely on the Plan sale as a basis for alleged alter ego liability (FAC ¶¶ 53-55). The Confirmation Order provides that transfers under the Plan do not subject the Debtor's "owners, partners, beneficiaries, members" to "any liability by reason of such transfer under any applicable law, including any laws relating to . . . successor or transferee liability." (Conf. Order ¶ 28(c).) Resolving those allegations requires interpretation and enforcement of that provision.

(c) The Action is directed at the persons charged with implementing the Plan. Messrs. Sohaili and Weintraub, through HS Blue Jay Way, LLC and 1966 BJW, LLC—the co-managing members of the Reorganized Debtor—are responsible under the Plan for distributions, post-confirmation litigation, and reporting on behalf of the Reorganized Debtor. Conf. Order ¶ 8; Plan, Art. V.C; ECF 322 at 9.

(d) The Action asserts claims that vested in the Reorganized Debtor. The FAC's generalized alter ego allegations seek recovery on account of alleged diversions of S&W's assets, which are Causes of Action the Plan vested exclusively

in the Reorganized Debtor. (FAC ¶¶ 16-17, 19; Plan, Art. IX.C; ECF 180 at 16:22-17:7.)

## IV. TIMELINESS

57. The Removing Defendants were purportedly served with the summons and Original Complaint on September 14, 2026. This Notice is filed within 30 days of that date and is timely under Federal Rule of Bankruptcy Procedure 9027(a)(3).

## V. STATEMENT REGARDING CORE STATUS AND CONSENT

58. The Removing Defendants state that the Action is a core proceeding to the extent it requires interpretation and enforcement of the Conditional Withdrawal Order and the Confirmation Order, challenges the Court-approved sale of property of the Estate, or asserts Causes of Action that vested in the Reorganized Debtor under the Plan. 28 U.S.C. § 157(b)(2)(A), (B), (L), (N), (O); *Travelers*, 557 U.S. at 151. To the extent any part of the Action is determined to be non-core, the Removing Defendants consent to the entry of final orders or judgment by the Bankruptcy Court. Fed. R. Bankr. P. 9027(a)(1).

## VI. COPIES OF ALL PROCESS AND PLEADINGS

59. Copies of all process and pleadings in the Action are attached as Exhibit "A." Fed. R. Bankr. P. 9027(a)(1).

## VII. NOTICE

60. Promptly after filing this Notice, the Removing Defendants will file a copy with the clerk of the Superior Court of the State of California for the County of Los Angeles and serve written notice on all parties to the Action. 28 U.S.C. § 1452(a); Fed. R. Bankr. P. 9027(b)-(c).

## VIII. RELATED FILINGS

61. The Removing Defendants intend to move to dismiss the Action or, in the alternative, for an order interpreting and enforcing the Conditional Withdrawal Order. The Reorganized Debtor will be filing in the main case a motion to interpret, enforce, and/or clarify the Conditional Withdrawal Order as to the Reorganized Debtor's liability and obligations related to the Note.

Dated: October 14, 2026

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: */s/Anthony R. Bisconti*
Anthony R. Bisconti
*Attorneys for 1966 BJW, LLC; HS Blue Jay Way, LLC; ERW One Thousand, LLC; LVC One Thousand, LLC; and 180 PCH, LLC*

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
903 Calle Amanecer, Suite 350, San Clemente, CA 92673.

A true and correct copy of the foregoing document entitled (specify): **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1452 AND FED. R. BANKR. P. 9027** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ________________________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On ___________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 14, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Ronald N. Richards - ron@ronaldrichards.com
Gregory E. Stone – gstone@stonedeanlaw.com
Alisa M. Morgenthaler – amorgenthaler@stonedeanlaw.com
Geoffrey S. Long - glong0607@gmail.com
***SERVED VIA EMAIL***

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 14, 2026 | Elizabeth Garcia | */s/ Elizabeth Garcia* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |